[No. D035206. Fourth Dist., Div. One. Dec. 24, 2001.]

JOHN RYAN, Plaintiff and Appellant, v.
CALIFORNIA INTERSCHOLASTIC FEDERATION et al., Defendants
and Appellants.

**[Opinion certified for partial publication.[1]]**

___

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

1034

**COUNSEL**

Robert P. Ottilie for Plaintiff and Appellant.

Andrew Patterson; Neil, Dymott, Perkins, Brown & Frank, Michael I. Neil, Constantine D. Buzunis and Jason E. Gallegos for Defendants and Appellants.

Charles W. Froehlich, Jr., for Borrego Springs Unified School District, Calexico Unified School District, Calipatria Unified School District, Coronado Unified School District, Escondido Union High School District, Fallbrook Union High School District, Grossmont Union High School District, Imperial Unified School District, Oceanside Unified School District, Palo Verde Unified School District, San Dieguito Union High School District and San Marcos Unified School District as Amici Curiae on behalf of Defendants and Appellants.

**OPINION**

**O'ROURKE, J.**—These appeals involve a multifaceted legal controversy that arose after Australian John Ryan, in August 1997, came to America to repeat the 12th grade at Rancho Buena Vista High School (RBV) and to participate in its basketball and football programs, but was later declared ineligible to participate in extracurricular California Interscholastic Federation (CIF) athletics. After exhausting his administrative remedies, Ryan successfully petitioned for a writ of mandamus requiring CIF, California Interscholastic Federation-San Diego Section; and San Diego Section Commissioner Jan Jessop (collectively CIF-SDS) to rescind their ineligibility rulings and to permit him to participate in athletics. He was also awarded

attorney fees pursuant to Code of Civil Procedure section 1021.5.[2] CIF-SDS appeals the order granting Ryan mandamus relief and attorney fees, asserting the trial court abused its discretion by applying an independent judgment instead of a substantial evidence standard of review, substantial evidence supports the athletic ineligibility rulings, and attorney fees under the circumstances were not warranted under section 1021.5.

Ryan appeals the judgment entered after a jury returned a unanimous defense verdict on his claim for monetary damages arising from the ineligibility rulings. In the underlying trial for damages, he claimed that he suffered emotional and physical injuries as a result of the alleged wrongful denial of eligibility, was prevented from obtaining an athletic scholarship to attend college, incurred medical bills upon being diagnosed with depression and suffered damage to his reputation. He asserts the trial court prejudicially erred in its rulings regarding collateral estoppel, undue influence, agency and the exclusion of material evidence that improperly impacted the scope of the trial. Ryan further contends reversal is required because the trial court committed misconduct, violated his right to due process at trial and incorrectly instructed the jury. As we shall explain, we dismiss CIF-SDS's appeal insofar as it challenges the underlying mandamus judgment, because CIF-SDS has completely performed and complied with the judicial directive. However, we reverse the award of attorney fees under section 1021.5 as unwarranted, because Ryan's lawsuit did not confer a significant benefit on a large class of people or cost him disproportionately to his personal interest in the matter. As to Ryan's appeal from the damages trial and defense verdict, we conclude his contentions are without merit. Accordingly, we reverse the judgment in part as to the attorney fees award. In all other respects, we affirm the judgment.

I

*Factual and Procedural Background*

Born on May 16, 1979, Ryan completed his 12th grade in November 1996 at St. Gregory's College (a private school providing instruction for the seventh through 12th grades) near Sidney, Australia. In early 1997, he elected to repeat the 12th grade, a practice permitted in Australia,[3] but in the United States like his older brother Steven. His older brother's experience

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[3]Apparently, students who have completed the 12th grade may take one or more years to repeat all or any of their subjects. Upon doing so, their university entrance mark is recalculated in light of the more recent results in any repeated subjects. The more recent score is used regardless whether the student performed worse upon retaking the subject.

persuaded him to repeat the 12th grade in the United States. After finishing high school in Louisiana, Steven sought to enroll at the University of Colorado on an athletic scholarship, boasting a 2.8 grade average and what he thought were sufficient credits to enroll. However, Steven learned in September 1996 that the NCAA (National Collegiate Athletic Association) Clearinghouse would not transfer his core classes from Australia at their full "three-hour" value, giving him instead only two hours of credit for every three-hour core class from Australia. He was thus unable to enroll at the University of Colorado and was required to attend a junior college. Consequently, Ryan decided that it would benefit him to repeat the 12th grade in the United States at an institution where he could obtain sufficient credits to qualify for an American college and where he could take courses specific to America to better prepare him for the college entrance exams and undergraduate education generally. St. Gregory's Assistant Principal Judith Holt believed Ryan would benefit from the opportunity to improve his academic performance, especially in light of his intent to attend college in the United States.

In spring 1997, Robert Ryan, John's father, telephoned David Moe, an assistant basketball coach at the University of Colorado who had recruited Steven, seeking recommendation of a high school that had good football and basketball programs. Later, after recruiting an RBV basketball player, Moe spoke with RBV basketball coach John O'Neill regarding the football program. O'Neill responded that it was a good program. Moe then highly recommended RBV, declaring that San Diego and its climate were similar to Sidney and Australia. Robert Ryan then initiated his son's admission to RBV by contacting the principal's office, which transferred him to Coach Bell. RBV counselor's office handled the transfer, as counselor Frank Donez coordinated the matter with St. Gregory's. He was accepted without any restrictions and eventually obtained a diploma from RBV in June 1998. Coordinated by Coach Bell, arrangements were made for Ryan to live with RBV assistant football coach Don Thomason during his stay.

In response to RBV principal Alan Johnson's August 28th letter requesting athletic eligibility for Ryan, CIF-SDS Commissioner Jessop interviewed Ryan and then, on September 9, denied the eligibility request on the following grounds:

"a. John Ryan has already completed eight semesters of school beyond his initial enrollment in the ninth grade. Our rules do not permit our own students to exceed the eight semester rule without a documented hardship. John Ryan indicated he has suffered no hardship in the past four years. Our

rules do not permit students in foreign exchange programs to exceed the eight semester rule. I cannot, in good conscience, apply lesser criteria to John.

"b. As a student in this country on an I-20 visa, John is subject to the same basic transfer rule as any other student. If he transfers schools without a corresponding change of residence on the part of his family, he is ineligible (at the varsity level) for 12 calendar months from the date of the transfer." Ryan appealed Jessop's rulings to a three-person appellate panel, which sustained them on September 26. He then appealed to the CIF Executive Director John J. Hayes who similarly sustained the decision on October 21.

On November 10, Ryan filed his petition and complaint for alternative and peremptory writs of mandate, declaratory relief, and relief under the Unruh Civil Rights Act (Civ. Code, § 52). On December 24, the trial court issued a writ of mandamus directing CIF-SDS to rescind its September 9 order denying Ryan's request for athletic eligibility because the record lacked substantial evidence supporting the reasons given for the denial and further did not reflect Ryan was given consideration for a possible waiver of the "transfer rule." The order was amended later to provide: "The court issues a writ of mandate ordering [CIF-SDS] to withdraw their rulings of September 9, 1997, September 26, 1997 and October 21, 1997 denying Alan Johnson's request for athletic eligibility as to John Ryan and to, instead, grant the request for athletic eligibility and allow John Ryan to participate in high school athletics based upon the Court's determination that the record below does not contain substantial evidence to support the reasons given for the denial nor does it reflect that consideration was given for a possible waiver of the 'transfer rule.' " Judgment was entered on the amended order on January 5, 1998, as the court retained jurisdiction over all issues relating to Ryan's petition and complaint and awarded him costs.

## II

### CIF-SDS's Appeal

*Ryan's Motion to Dismiss CIF-SDS's Appeal Has Merit*

Preliminarily, Ryan moves to dismiss CIF-SDS's appeal from the mandamus judgment or, alternatively, to strike its appellants' opening brief or portions of it. Specifically, he asserts the appeal from the mandamus judgment should be dismissed because CIF-SDS has completely performed and complied with the judicial directive. His motion is not directed to CIF-SDS's appeal from the order for attorney fees under section 1021.5.

■ "A party who voluntarily complies with the terms of a judgment, or who satisfies it by voluntary payment or otherwise, impliedly waives the right to appeal from it." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 209, p. 264; *A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank* (1986) 182 Cal.App.3d 356, 359 [227 Cal.Rptr. 308]; *Hellman Commercial T. & S. Bk. v. Alden* (1929) 206 Cal. 592, 599 [275 P. 794]; *Bank of Martinez v. Jahn* (1894) 104 Cal. 238 [38 P. 41].) The underlying rationale for this rule that an appeal is dismissed where the judgment is satisfied is because the satisfaction moots the issues on appeal. (*A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank, supra,* 182 Cal.App.3d at p. 359.) However, compliance or satisfaction that is compelled does not constitute a waiver of the right to appeal. Such a waiver is implied only where the satisfaction or compliance is the product of compromise or is coupled with an agreement not to appeal. (9 Witkin, Cal. Procedure, *supra,* Appeal, § 209, pp. 264-265; *Reitano v. Yankwich* (1951) 38 Cal.2d 1, 4 [237 P.2d 6, 39 A.L.R.2d 191]; *Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, 745 [92 Cal.Rptr.2d 94].) ■ Within the context of a party's voluntary compliance with a judgment granting a peremptory writ of mandate, the party is deemed to have waived its right to appeal from those portions of the writ with which it voluntarily complied or purported to do so. (*City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 970 [187 Cal.Rptr. 379]; *Chang v. City of Palos Verdes Estates* (1979) 98 Cal.App.3d 557, 565 [159 Cal.Rptr. 630].) In *San Diego S. D. v. Supervisors* (1893) 97 Cal. 438 [32 P. 517], the court granted a motion to dismiss where a board of supervisors refused to levy a tax requested by a school board, the school board sought a writ of mandate, the trial court granted the writ directing the supervisors to levy the tax, the supervisors did so, and appealed. The court reasoned: "The defendant voluntarily complied with the mandate of the court, and the judgment was thereupon satisfied and its force exhausted. After it had thus been satisfied, there was nothing in the judgment which the court had rendered of which the defendant could complain, or about which he could say that it was aggrieved. A reversal of the judgment would not of itself set aside the levy of the tax which had been made, nor did the appellant, by its compliance with the judgment, lose any property or rights of which restitution could be made in case of a reversal. [Citation.] The proceeding was for the purpose of compelling the defendant to perform an official duty, and not one in which it had any personal rights to be affected. By reason of its levy of the tax in obedience to the judgment, rights and interests of other parties have supervened, and it would be unjust to those who have acquired or lost such rights by reason of its compliance with the judgment, if the appellant should now be permitted to seek a reversal of the judgment under which, by reason of its own acts, those rights and

interests have been acquired." (*Id.* at pp. 439-440.) Later, the Supreme Court revisited the above case in *Warner Bros. Co. v. Freud* (1901) 131 Cal. 639, 646 [63 P. 1017], while discussing the appellate effect of satisfaction of a monetary judgment before appeal (an exception to the general rule of waiver), and declared it "broadly distinguishable," partially quoting the language above.

A more detailed examination of the procedural record reveals that CIF-SDS, on January 2, 1998, requested a clarification of the December 24, 1997 order as to remand regarding its failure to consider waiver of the transfer rule, prompting the court's amendment to the order on January 5, 1998. Following the filing of the judgment on that date, CIF-SDS objected to its entry and requested the court to withhold the filing of a final judgment until the entire case had been resolved, including the damages claim. Within that pleading, CIF-SDS declared: "These defendants have acceded to the court's order of December 24, 1997, and have advised the district that the plaintiff is not, pursuant to the court's order, ineligible to participate in athletics on the basis of CIF Rules or rulings. The CIF, unless or until there is further court action on the matter, has not, and will not, impeded [*sic*], in any way, plaintiff's basketball activities at Rancho Buena Vista."

CIF-SDS asserted that given Ryan had obtained interim relief permitting him to play basketball and the court had retained jurisdiction over the parties, he would suffer no harm as to his basketball activities by withholding the final judgment. In fact, Ryan was permitted to try out for the RBV basketball team and did so successfully. CIF-SDS further objected to the judgment and then noticed their intent to move for new trial, listing generally six statutory grounds. In their points and authorities in support of their new trial motion, CIF-SDS declared: "Although the moving defendants remain in respectful disagreement with the court's decision of December 24, 1997, they do not contest, in this motion, the eligibility of the plaintiff nor do they seek to relitigate or deprive the plaintiff of eligibility. That decision was made on December 24, 1997, and these defendants have no interest in encumbering the student, or anyone else, with continuing questions or issues regarding his eligibility."

On March 19, the trial court denied their motion for new trial, reasoning that the grounds asserted in the motion are not included within those authorized under section 657 and that they have not submitted points and authorities and/or evidence to support any of the grounds set forth in either their notice or under section 657. On March 27, the trial court denied CIF-SDS's motion to tax costs in part and, pursuant to section 1021.5,

granted in part Ryan's motion for attorney fees and costs in the amount of $47,944.75. CIF-SDS filed its notice of appeal on April 8, requesting review of the mandamus judgment, the denial of their motion for new trial and the order granting Ryan's motion for attorney fees and costs. On May 1, the trial court ordered Ryan to file a second amended petition and complaint that would include only the causes of action against CIF-SDS. Ryan complied in January 1999, seeking damages based on CIF-SDS's ruling denying RBV's request for his athletic eligibility. On February 22, this court dismissed CIF-SDS's appeal based on the one final judgment rule given the pending derivative damages claim. On October 18, judgment based upon a unanimous jury verdict was entered in favor of CIF-SDS. The parties have respectively timely appealed from that judgment.

Consequently, contrary to CIF-SDS's assertion otherwise, although they may not have agreed with the trial court's ruling, their conduct evinced, in fact, their acquiescence to and voluntary compliance with the mandamus order. CIF-SDS did not seek reconsideration of the trial court's decision, nor did they challenge its underlying basis by a request for extraordinary relief in our court or in their motion for new trial. Moreover, CIF-SDS did not seek to stay the order while pursuing extraordinary relief from this interlocutory order. With an inadequate remedy by appeal given the time restraints imposed by Ryan's one-year senior status, impending basketball tryouts following a completed football season and potential consequences to third parties in the event of appellate reversal, CIF-SDS elected to appeal. In other words, they sought an avenue of appellate relief that could not obtain review of the underlying mandamus order or judgment until completion of the damages trial, as reflected by our dismissal of their initial appeal. Indeed, their objections to the filing of the mandamus judgment confirm this tactical decision. It is within this setting that CIF-SDS made it clear to the trial court and the parties by its trial papers that they had voluntarily complied with the mandamus order, had no intent to relitigate the issue of athletic eligibility, and had no interest in encumbering Ryan or any third parties with continuing questions regarding his eligibility.

In this latter regard, CIF-SDS's decision whether to comply with the court's mandamus order had potential ramifications for hundreds of student athletes other than Ryan. Under the CIF bylaws, all the students at a school can be penalized by the CIF-SDS if their school allows a student to play sports under a court order that is later overturned. Under CIF bylaw 227, CIF-SDS has the authority to penalize in various ways a student, his or her team, or his or her school, if the student plays sports under a court order that is later reversed. Sanctions include keeping the school's teams out of CIF

playoffs in later years, vacating the team's performance, vacating the team's place in the final standings, and requiring the return to CIF-SDS of the team's trophy, banner, patches and any other indicia of victory. Here, Ryan's basketball team won its conference championship and was a semifinalist in the CIF tournament. We question whether RBV would have allowed Ryan to participate had it known CIF-SDS was not "really" complying with the judgment and would potentially seek sanctions against the school several years later. CIF-SDS echoes this reservation of rights to sanction Ryan and RBV under CIF bylaw 227 in their papers before us.

Under these circumstances, the relief that CIF-SDS has prayed for as to the underlying mandamus judgment, if granted, would have no effect as to eligibility on Ryan, who graduated three years ago after playing for RBV's basketball team, but could potentially injure RBV and its student athletes in the manner described above. That is unacceptable where CIF-SDS did not in good faith pursue timely appellate review of an interlocutory order or judgment by writ, but rather expressly represented a willingness to comply with the judicial directive and in fact did.[4] We grant Ryan's motion to dismiss.[5]

### The Trial Court Abused Its Discretion in Awarding Attorney Fees Under Section 1021.5

 CIF-SDS persuasively contends the trial court abused its discretion in awarding Ryan attorney fees under section 1021.5, because he failed to

---

[4]CIF-SDS and amici curiae unpersuasively suggest this matter should nevertheless be heard because it presents a recurring question of broad public interest or involves a factor that permits this court to exercise its discretion to retain the appeal. However, our review of the various exceptions that permit us to exercise discretion to retain this appeal has proved fruitless. CIF-SDS's principal challenge to the underlying mandamus judgment is simply a substantial evidence argument confined to the factual circumstances unique to this case. It does not involve a constitutional challenge to the validity of any of its bylaws or even a judicial interpretation contrary to their prior application of the relevant rules. (Cf. *Jones v. California Interscholastic Federation* (1988) 197 Cal.App.3d 751, 756 [243 Cal.Rptr. 271].) Moreover, it does not present an important legal question necessarily capable of repetition requiring clarification. (Cf. *Redevelopment Agency v. Commission on State Mandates* (1996) 43 Cal.App.4th 1188, 1198 [51 Cal.Rptr.2d 100].) CIF-SDS's additional assertion the trial court erred in not remanding the case to them with instructions to consider the possible waiver of the transfer rule neither compels nor warrants our entertainment of this portion of CIF-SDS's appeal.

[5]Accordingly, we do not address CIF-SDS's contentions challenging the underlying mandamus judgment, including their claims that substantial evidence supports their athletic ineligibility findings and that the trial court erred in not remanding the matter to them to consider waiver of the transfer rule. Similarly, we do not address Ryan's responsive suggestion for the first time on appeal that perhaps the appropriate standard of review for the trial court in this section 1094.5 proceeding was independent judgment.

meet his burden of showing that his lawsuit conferred a significant benefit on a large class of people and its costs disproportionately transcended his personal interest in the matter.

■ Section 1021.5 codifies the "private attorney general doctrine" adopted by our Supreme Court in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317 [193 Cal.Rptr. 900, 667 P.2d 704]; *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632]; *Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1566 [46 Cal.Rptr.2d 667].) The doctrine is designed to encourage private enforcement of important public rights and to ensure aggrieved citizens access to the judicial process where statutory or constitutional rights have been violated. (*Olney v. Municipal Court* (1982) 133 Cal.App.3d 455, 463 [184 Cal.Rptr. 78].) In determining whether to award attorney fees under section 1021.5 to the "successful party," we apply a three-prong test inquiring whether (1) the litigation resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit has been conferred on the general public or a large class of individuals, and (3) the necessity and financial burden of private enforcement renders the award appropriate. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874]; *Family Planning Specialists Medical Group, Inc. v. Powers, supra,* 39 Cal.App.4th at p. 1567; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 169-170 [17 Cal.Rptr.2d 510].) Regarding the nature of the public right, it must be important and cannot involve trivial or peripheral public policies. The significance of the benefit conferred is determined from a realistic assessment of all the relevant surrounding circumstances. As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter. (*Olney v. Municipal Court, supra,* 133 Cal.App.3d at pp. 463-464.) The decision whether the claimant has met his burden of proving each of these prerequisites and is thus entitled to an award of attorney fees under section 1021.5 rests within the sound discretion of the trial court and that discretion shall not be disturbed on appeal absent a clear abuse. (*Family Planning Specialists Medical Group, Inc. v. Powers, supra,* 39 Cal.App.4th at p. 1567; *Olney v. Municipal Court, supra,* 133 Cal.App.3d at p. 464.) In other words, an attorney fees award under section 1021.5 will only be reversed where " 'it is clearly wrong or has no reasonable basis.' [Citation.]" (*Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 598 [86 Cal.Rptr.2d 575]; *Notrica v. State Comp. Ins. Fund* (1999) 70 Cal.App.4th 911, 955 [83 Cal.Rptr.2d 89].)

 Preliminarily, we note that the standard articulated above strictly governs the trial court's determination whether attorney fees should be awarded under section 1021.5. To the extent the trial court's comments suggest or imply the attorney fees award was intended to punish CIF-SDS or to coerce them to conduct their proceedings with greater precision and caution, such a consideration is foreign to the determination regarding whether attorney fees are warranted under section 1021.5. Similarly, to the extent the trial court's comments suggest it imposed the fees burden on the party whose conduct necessitated the mandamus order without considering whether the litigation imposed a financial burden on the claimant disproportionate to his individual stake in the matter, it ignores the correct standard cited above. Rather, where the financial burden is disproportionate, section 1021.5 serves to underwrite successful litigation that effectuates strong public policy and obtains benefits for a broad class of citizens. *(County of San Diego v. Lamb* (1998) 63 Cal.App.4th 845, 852 [73 Cal.Rptr.2d 912]; *Hospital Systems, Inc. v. Office of Statewide Health etc. Development* (1994) 25 Cal.App.4th 1686, 1690 [30 Cal.Rptr.2d 922].)

The trial court abused its discretion in awarding Ryan section 1021.5 attorney fees. Assuming without deciding his litigation resulted in the enforcement of an important right affecting the public interest, Ryan has not met his burden of showing that a significant benefit has been conferred on a large class of persons or that the cost of his victory transcended his personal interest such that the necessity of pursuing the case placed a burden on him disproportionate to his individual stake in the matter. As to the benefit allegedly conferred, he asserted below that he not only protected the rights of foreign students to participate in sports, or students that are held back or repeat a grade, but also drew attention to the deficiencies within the CIF rule-making and interpreting processes. He thus declared that his actions benefited all students and sent the message: "[B]e fair in your rulings and treat all applicants equally." We think not. The trial court's ruling here does not constitute a ringing declaration of the rights of all high school student athletes. Rather, governed by its unique factual circumstances, this case was simply a substantial evidence matter involving Ryan's personal interests.[6] The trial court found that the record did not support the denial of his eligibility based on either the eight-semester rule or the transfer rule. As to

---

[6]Ryan argued and the parties and the trial court proceeded below on the belief that the trial court should apply the "substantial evidence" standard of review in this section 1094.5 proceeding. Although language within the mandamus order implies the trial court may have independently reweighed the evidence by rephrasing issues and reviewing the evidence supporting rearticulated contrary findings, it nevertheless couched its ultimate findings in terms of the agreed-upon standard, concluding no substantial evidence supported the CIF-SDS's bases for denying Ryan athletic eligibility. Consequently, the issue as litigated before

the latter, it appeared to the trial court that he was denied any consideration for a waiver, since the record did not reflect any evidentiary rulings regarding his eligibility for one. Moreover, the court voiced its concern during the fees hearing that CIF-SDS, although a voluntary entity in character, had failed to act in a timely fashion with precision according to its rules and regarding its findings. However, that assessment of the process does not transmute this substantial evidence matter involving the personal interests of one student athlete into a vindication of the rights of all students, foreign or not, to participate in sports when repeating a grade. Ryan acknowledges that as to fifth year eligibility he does not challenge the CIF rule, but simply asserts he has shown he falls within its parameters. Similarly, regarding foreign student eligibility under CIF bylaw 212 permitting waiver of the transfer rule for foreign students, Ryan asserts that Jessop misrepresented the CIF rules in her ruling by telling him that foreign students who came here without their parents are not eligible for sports. Again, he does not meaningfully challenge CIF bylaw 212, but instead contends that he has shown that he is entitled to foreign student eligibility just like his many predecessors. Highlighting that this matter involved Ryan's interests and not those of other students, the administrative mandamus record shows that Jessop, during the preceding year, had approved foreign student athletic eligibility under CIF bylaw 212 for 20 foreign exchange students and five foreign students, like Ryan, not within an approved exchange program. Consequently, the grant of mandamus relief under limited factual circumstances established here did not result in conferring a significant benefit on a large class of people. Although we acknowledge litigation like this almost invariably causes a party like CIF-SDS to act differently under like circumstances in the future, that is insufficient under the circumstances to warrant imposition of fees. (See *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306].)

Nor has Ryan established that the cost of his victory transcended his personal interest in pursuing the litigation. To an Australian athlete, what is the value of the right to compete in the sport of American football for the very first time, or basketball? In evaluating this preliminary consideration, one cannot ignore that the "right to step in the ring" is a necessary predicate to being considered for college athletic scholarships and to obtaining the experience necessary to ever compete professionally. To Ryan, repeating the 12th grade in the United States enabled him to not only improve himself academically, but also to showcase himself athletically against younger competition. Additionally, Ryan's petition and complaint, both before and

---

the trial court was whether substantial evidence supported CIF-SDS's ruling that Ryan was ineligible under the eight-semester rule and the transfer rule. Nothing more, nothing less.

after amendment, sought damages. In other words, Ryan's litigation goal was always to obtain athletic eligibility *and* compensatory damages. He accomplished the former, but not the latter. Nevertheless, this is not a case where Ryan has shown the cost in bringing it is disproportionate to his personal stake in its outcome, but rather one where the enforcement of the public interest is merely coincidental to the obtaining of personal goals. (See *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 750-751 [246 Cal.Rptr. 285].)

### III*

### RYAN'S APPEAL

*Supplementary Procedural Background*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

*Disposition*

CIF-SDS's appeal insofar as it challenges the underlying mandamus judgment is dismissed. The judgment is reversed in part as to the award of attorney fees under section 1021.5. In all other respects, the judgment is affirmed. The parties shall bear their own costs.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied January 23, 2002, and the petition of appellant John Ryan for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein.

---

*See footnote 1, *ante*, page 1033.