[No. B215777. Second Dist., Div. Three. Aug. 19, 2010.]

NEW WEST CHARTER MIDDLE SCHOOL, Plaintiff and Appellant, v. LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

832

834

COUNSEL

Procopio, Cory, Hargreaves & Savitch, John C. Lemmo, Gregory V. Moser; Middleton, Young & Minney and Paul C. Minney for Plaintiff and Appellant.

Latham & Watkins, James L. Arnone and Winston P. Stromberg for California Charter Schools Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Strumwasser & Woocher, Gregory G. Luke, Aimee Dudovitz, Beverly Grossman Palmer; David R. Holmquist and Mark S. Fall for Defendants and Respondents.

OPINION

CROSKEY, J.—Proposition 39, approved in 2000, amended Education Code section 47614 to provide, in pertinent part, "Each school district shall make available, to each charter school operating in the school district, facilities sufficient for the charter school to accommodate all of the charter school's in-district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools of the district." (Ed. Code, § 47614, subd. (b).) Plaintiff and appellant New West Charter Middle School (New West) sought school facilities for the 2008–2009 school year from defendant and respondent Los Angeles Unified School District (LAUSD),[1] pursuant to Education Code section 47614.

---

[1] References to LAUSD incorporate, where necessary, its board of education and its superintendent of schools, who are also defendants and respondents in this action.

LAUSD offered New West a number of classrooms and the shared use of other facilities at Fairfax High School. New West accepted the offer; thereafter, LAUSD purported to withdraw it, and refused to allow New West to colocate at Fairfax. New West sought and obtained writ relief requiring LAUSD to provide facilities at Fairfax or another location satisfying LAUSD's duties under Education Code section 47614. LAUSD then offered facilities at Logan Elementary School. New West rejected the offer as wholly inadequate, and sought an order compelling compliance with the trial court's writ. The trial court agreed that the Logan offer did not comply with its writ, and fined LAUSD. However, by this time, the 2008–2009 school year was well under way, and it was too late for New West to relocate from its commercially leased facility to an LAUSD campus. The trial court therefore concluded that no space would be provided to New West for the 2008–2009 school year, and instead awarded New West damages.

After a hearing, the trial court awarded New West $175,630.72 in damages. New West sought attorney fees under the private attorney general statute. (Code Civ. Proc., § 1021.5.) The trial court denied fees on the basis that New West's victory did not provide a significant benefit to a large class of individuals. New West appeals, contending that the award of damages is insufficient and the trial court erred in denying its motion for attorney fees. We modify the judgment to slightly alter the amount of damages awarded, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As LAUSD no longer contests its liability for rescinding the Fairfax offer, it is unnecessary to discuss, in any detail, the factual circumstances giving rise to the trial court's conclusion that LAUSD was liable. We discuss only the facts necessary to a determination of the proper amount of damages and New West's appeal of the denial of its motion for attorney fees.

### 1. *The Terms of the Improperly Withdrawn Fairfax Offer*

New West has a campus located in a building on Pico Boulevard, in a property it has leased since 2003 from a private party. We hereafter refer to New West's campus as "Pico." In some ways, Pico is better than the facilities offered to New West at Fairfax. For example, Pico has private administrative offices, a full media center, and a library/music room. In other ways, however, Fairfax is superior. Pico does not have a large auditorium or a large outdoor area for physical education. It rents space at other facilities for these purposes. LAUSD's offer of colocating New West at Fairfax would have given New West the opportunity for the shared use (two days per week and alternating fifth days) of such facilities at Fairfax. New West also would have been given the exclusive use of 12 classrooms at Fairfax.

■ When New West was offered the shared use of Fairfax, there were certain costs associated with the offer. Education Code section 47614, subdivision (b)(1) provides that the school district may pass on to the charter school a pro rata share of certain defined costs. "The charter school shall not be otherwise charged for use of the facilities." (*Ibid.*) We refer to this amount as the "pro rata share." In LAUSD's offer of Fairfax, LAUSD indicated that the pro rata share was $6,378. New West does not argue that the pro rata share was incorrectly calculated.

Governing regulations also provide that while the facilities, furnishings and equipment provided to a charter school shall remain the property of the school district (Cal. Code Regs., tit. 5, § 11969.4, subd. (a)), the "ongoing operations and maintenance of facilities and furnishings and equipment is the responsibility of the charter school" (Cal. Code Regs., tit. 5, § 11969.4, subd. (b)). As part of its offer of colocation at Fairfax, LAUSD offered a draft "Use Agreement," under which LAUSD would provide maintenance and operations (M&O) services for the entirety of Fairfax, and New West would reimburse LAUSD for the M&O costs related to the classrooms it exclusively used, and its proportionate share of M&O costs for the shared facilities. The M&O charges also included a proportionate share of the costs of utility services. LAUSD calculated New West's M&O obligation for colocation at Fairfax to be $276,266. Although New West accepted LAUSD's offer of colocation at Fairfax, New West did not accept the provision that it was to be responsible for $276,266 in M&O expenses, believing the charges to be out of compliance with governing law.

When LAUSD revoked the Fairfax offer after New West had accepted it, New West renewed its five-year lease of Pico, and brought the instant action for writ of mandate. New West obtained a writ compelling LAUSD to honor its offer.

### 2. The Rationale of the Trial Court's Ruling

On September 5, 2008, after briefing and a hearing, the trial court granted the petition for writ of mandate. The court's tentative ruling, which it adopted, states, "Plainly, as a matter of contract law, the parties had a binding contract. LAUSD made an offer and New West timely accepted it. The fact that New West reserved its right to challenge any aspect of the offer that was unlawful does not affect this acceptance. The purported 'withdrawal' letter was therefore legally meaningless as a matter of contract law. [¶] The withdrawal was also meaningless under Proposition 39. Neither that law, nor any other provision of the Charter Schools Act, provides LAUSD with any authority to 'withdraw' its mandatory obligation to share facilities with New West. The 'withdrawal' only means that LAUSD failed to perform its

mandatory duty under Proposition 39." The court summed up its ruling by stating, "In short, LAUSD has violated its statutory obligation to accommodate New West students. It has also breached a contract to do so." The court's ruling concluded, "LAUSD is ordered to fulfill its Proposition 39 duty, and its offer to New West, for the facilities offered at Fairfax High or other acceptable location for the school year 2008–09."[2]

### 3. *LAUSD's Inadequate Offer Leads to Briefing on Damages*

LAUSD was required to provide New West with appropriate facilities, at either Fairfax or another location. In purported compliance, LAUSD offered New West the use of some facilities at Logan Elementary School, which the trial court ultimately determined to be inadequate under the law. The court fined LAUSD $1,000 for its refusal to comply with the writ. The court asked New West if it still sought compliance with the writ, considering the passage of time. Counsel for New West elected to forgo a further order of compliance, and simply sought damages. The court set a briefing schedule on the issue of damages.

In its motion which led to the trial court's determination that the Logan offer was wholly inadequate, New West had sought damages "in the amount of $261,191.28. This amount represents the difference between New West's [Pico] rent for the 2008–2009 school year, and the pro rata charge identified by LAUSD in its [Fairfax] offer." (Boldface omitted.) However, when the trial court sought briefing on the issue of damages, New West sought a new measure of damages.

### 4. *New West's Opening Brief on Damages*

New West's new briefing was based on the premise that Fairfax was, in fact, superior to Pico. New West sought damages in the amount of (1) the hypothetical cost of replicating the facilities it would have obtained at Fairfax; plus (2) the costs it allegedly incurred as the result of the revocation of the Fairfax offer. At no point in its opening brief on damages did New West consider *any* offset against these amounts for costs it would have paid LAUSD had it accepted the Fairfax offer.[3]

---

[2] It is important to recognize the issues that this ruling *did not* address. Specifically, the court did not consider whether the offer of Fairfax was, in fact, compliant with the law. The court did not consider whether LAUSD's required Use Agreement and the M&O charges therein were permissible. The court simply concluded that the purported withdrawal of the accepted offer was a breach of contract and a breach of LAUSD's statutory duty to share district facilities with charter schools.

[3] Indeed, New West failed to even account for the $6,378 pro rata share, which it had always acknowledged to be a permissible cost.

New West obtained an expert appraiser, James H. Pike, to determine the hypothetical rental costs for similar facilities to those it would have had at Fairfax. Performing a market analysis of the rents of properties that could be used as charter schools in the Fairfax area, and taking into account reduced rent for the part-time use of shared facilities, Pike concluded that fair rental value would be in the range of $400,000 to $470,000.

Pike's report noted that his analysis related only to rental value. He speculated that there may be other damages suffered by New West, such as the denial of access to equipment or services that might have been provided at Fairfax; however, this was noted to be beyond the scope of his report. Pike also noted that, although his market rent analysis included rent for the shared-use facilities, none of the comparison properties he considered actually had all such facilities (e.g., auditorium, sports field) on a single property. Pike noted that Fairfax had all of the facilities on an single integrated campus, and that, had New West colocated at Fairfax, it would have had the benefit of such an integrated campus.

With this language as a starting point, New West then embarked on an attempt to give value to the benefit of location at a so-called integrated campus. New West did not consider, for example, the tangible costs of transporting students to satellite facilities. Instead, New West attempted to place a value on the intangible benefits of an integrated campus. New West's calculations went as follows: New West has 284 pupils, who should have been housed at a facility costing $470,000 per year to rent. This amounts to a $1,655 per student expense for facilities. The funds provided New West by the State of California amount to $8,547 per pupil. Subtracting the $1,655 facilities cost from the $8,547 per pupil leaves $6,892 as the nonfacilities or "operating" cost per pupil. Private schools, on the other hand, obtain $25,000 in tuition per pupil. Subtracting the same $6,892 operating cost per pupil results in a determination that private schools spend the remaining $18,108 per pupil on facilities. New West then concludes that private schools spend $16,453 ($18,108 - $1,655) more on facilities per pupil, an amount which allegedly "reflects [the] added value of an integrated campus setting." Multiplying this by New West's 284 pupils, New West estimates the value of an integrated campus to be $4,672,652. Perhaps in realization that this number is ridiculously high, New West sought one-tenth of it ($467,265) as the value of an integrated campus.[4]

---

[4] We here address some of the many flaws inherent in New West's calculation. We first note that, while the calculation appears to be based on New West's presumed facilities costs per student, that number is actually irrelevant to the calculation. Indeed, all of New West's calculations are simply window dressing for its unspoken assumption that *every penny* of the $16,453 difference between private school tuition of $25,000 and the California per-pupil spending of $8,547 is allocated by private schools to the cost of facilities. (This is apparent

In total, New West sought $470,000 as "the likely market rent of what New West would have paid as of the valuation date for similar facilities and amenities to Fairfax in the commercial marketplace" and $467,265 for the value of an integrated campus. New West added to this amount its purported costs incurred as a result of having to renew its five-year lease of Pico. Specifically, New West assumed that it could sublet Pico, thus avoiding its rental obligation, but that it would take six months to find an appropriate sublessee. Thus, New West added $133,784, six months' rent, as its cost to sublet Pico. The total damages sought amounted to $1,071,049.

### 5. New West Obtains a Supplemental Report from Pike

New West was not satisfied with the amount of damages sought in its opening brief on damages, however, and had Pike prepare a supplemental report. On February 19, 2009, Pike prepared a supplement to his initial evaluation, stating that "The Client has requested annual rent estimates for a hypothetical new middle school in the Los Angeles area proximate to Fairfax High School." Pike concluded the rent estimate for such a hypothetical school would be $1.26 million to $1.48 million. Although Pike noted in his original report that most of the buildings at Fairfax were constructed in the 1950's and 1960's, his supplemental report considered the rental value of new construction, with no deduction for depreciation.

This supplemental report was requested by New West as an attempt to estimate the value of Fairfax (or other reasonably equivalent school) under

when New West's calculation is considered algebraically. Consider New West's facilities expenses per student to be "F." As its operating expenses and facilities expenses will always add up to $8,547, its operating expenses (O) per student are $8,547 - F. New West calculates private school facilities expenses as $25,000 - O, which is the same as $25,000 - ($8,547 - F). Then, New West calculates the difference between private school facilities expenses and its own facilities expenses by subtracting F. In other words: ($25,000 - ($8,547 - F)) - F. The facilities expenses drop out, and the difference is $25,000 - $8,547 = $16,453.)

New West frequently argues that, had it been provided with the Fairfax facilities, it would have been able to invest its cost savings from not having to rent Pico into the education of its students, but it here assumes that, no matter how much money private schools charge for tuition, *none* of the amount in excess of $8,547 is allocated to education. We believe that to state this assumption is to refute it. Nonetheless, we add two observations. First, taking New West's calculations to their obvious conclusion, New West believes that a private school for 284 students spends $5,142,672 ($18,108 times 284) on facilities per year. Yet New West's own expert would later conclude that fair market rent of *a brand new middle school* for 284 students, with all facilities in an integrated campus in the Fairfax area, would be between $1.26 million and $1.48 million. Thus, New West's assumption that similarly sized private schools spend over triple that amount on facilities is utterly baseless. Second, district schools receive the same California contribution of $8,547 per pupil and provide an integrated campus to students for free. The idea that any parent would spend $25,000 to obtain an integrated campus and no more than $8,547 in operating expenses is nonsense. Parents pay high tuitions to send their children to private schools because the higher tuitions will be invested in their children's education. New West's assumption to the contrary cannot be accepted.

Evidence Code section 824. That section provides that a "just and equitable method of determining the value of nonprofit, special use property . . . for which there is no relevant, comparable market, is the cost of purchasing land and the reasonable cost of making it suitable for the conduct of the same nonprofit, special use, together with the cost of constructing similar improvements." (Evid. Code, § 824, subd. (a).) Depreciation of improvements is not to be taken into account. (Evid. Code, § 824, subd. (b).)

### 6. *LAUSD's Opposition Briefing on Damages*

LAUSD's opposition focused on two main points. First, LAUSD argued that the Pico facilities were, in fact, superior to the space at Fairfax in numerous ways. For example, New West had exclusive use of Pico, while it would have to share Fairfax with high school students. At Pico, New West also had exclusive use of a library/music room and computer room, which it would not have at Fairfax.

Second, LAUSD again argued that New West's calculations failed to account for the costs associated with colocating at Fairfax, including M&O expenses. LAUSD noted that, until the current round of briefing, New West had repeatedly asserted that the proper measure of damages consisted of the costs at Pico less the costs of colocation at Fairfax. LAUSD performed this calculation. It added to New West's rent at Pico the costs of renting space at a park, renting an auditorium for special events, and its parking fee. It subtracted from this the pro rata share and M&O costs associated with colocation at Fairfax. The result was an amount of damages of $5,724.76.[5]

### 7. *New West's Reply*

In reply, New West argued that Evidence Code section 824 provided the appropriate method of valuing the school facilities which LAUSD should have provided New West under statute. New West further argued there should be no M&O charge taken into consideration, as the charge is contrary to law.[6]

---

[5] The immediately apparent flaw in this calculation is that it fails to take into account New West's M&O obligation *at Pico*. Under New West's lease, it is obligated to pay all utilities, maintain the property in good condition, and, in fact, procure maintenance contracts for the HVAC (heating, ventilating, and air conditioning), fire systems, roof covering and drains, and clarifiers. When comparing the costs that were incurred at Pico with the costs that would have been incurred at Fairfax, if M&O costs are included in the latter number, they must also be included in the former. There is no evidence in the record as to the amount of these costs.

[6] New West also added to its damage calculation the figure of $150,000, as the cost to furnish and equip the Pico facility. New West had spent $750,000 to furnish and equip Pico, and since it had a five-year lease, it sought one-fifth of this amount. But New West spent the $750,000 to furnish and equip Pico during its *initial* five-year lease term, not the renewal that was required by the withdrawal of the Fairfax offer. New West's entire case is based on

### 8. *The Court's Tentative Ruling and Hearing on Damages*

The trial court issued a tentative ruling on damages that concluded that Pico was, in fact, inferior to Fairfax, as Pico lacked playing fields, a cafeteria, an auditorium, science labs, and off-street parking. The court concluded that proper damages should be determined by a breach of contract measure. However, it believed that LAUSD's out-of-pocket "calculation does not adequately evaluate the loss sustained when it refused New West access to *the LAUSD facility* to which it was entitled."

The court then chose an alternative measure of contract damages—the difference in value between the Fairfax facility promised and the Pico facility received. As to the value of Fairfax, the trial court adopted Pike's $470,000 determination of the market rental of Fairfax. The court gave no additional value for the presence of an integrated campus, and noted that Pike's figure included the rental value of all shared facilities. As to the value of Pico, the court determined its value to be its rental cost (including the cost of renting additional facilities), an amount of $297,369.28. The difference is $175,630.72,[7] which is the amount the court tentatively awarded as damages. The court did not consider M&O costs—or any expenses associated with colocation at Fairfax—in its calculation, nor did it consider New West's costs of subleasing. Both of these costs were not relevant to the difference in *value* between the facility New West should have received and the facility it did receive.

The hearing on damages revealed the trial court's rationale which led to its choice of this somewhat unusual measure of damages.[8] The court indicated that it would have preferred to award out-of-pocket damages, but that calculation would involve subtracting from the costs spent at Pico the costs that would have been spent at Fairfax, including M&O, and would have resulted in virtually no award for New West. New West argued that it would have performed its own M&O at Fairfax and that LAUSD was not permitted to charge it for these amounts. The court replied that even if New West paid for its own M&O, there would still be a cost associated with it, and New West provided no evidence of this cost. As the record stood, there was a total absence of evidence that New West could have performed its own M&O at Fairfax *for free*, and the court doubted that New West could have presented

the premise that it would have left Pico, and its improvements, for Fairfax. New West therefore cannot recover for any money it had previously invested in equipping Pico.

[7] The difference is actually $172,630.72. Neither party noticed the error.

[8] The trial court acknowledged that the measure was "probably wrong," and implied that it was attempting to do equity under the circumstances.

such evidence.[9] The LAUSD's evidence of M&O costs was the only evidence in the record and, despite New West's general arguments that those costs were unreasonable on their face, the court did not reject LAUSD's valuation. Similarly, the court agreed that M&O expenses at Pico should also be included in an out-of-pocket calculation, yet there was no evidence of those expenses provided. Given the state of the record, an out-of-pocket award would be nominal. The court stated that its tentative ruling attempted to award New West some measure of damages for LAUSD's wrongdoing. The court adopted its tentative, and awarded New West $175,630.72 in damages.

### 9. *New West Seeks Private Attorney General Attorney Fees*

At the same time the parties were briefing damages, they were also briefing New West's motion for private attorney general attorney fees. New West sought its attorney fees in the amount of $266,372.30 times a multiplier of two. New West argued that this case provided a benefit "to thousands of school children, parents, and charter schools throughout the LAUSD and the rest of the state, and the general public" by requiring LAUSD to fulfill its statutory obligations under Education Code section 47614. New West argued that the award of damages in this case benefits all charter school students in California, as it "makes school districts aware of the potential consequences when they shirk their statutory duties to fairly share school facilities among all district students, including those that attend charter schools."

The trial court denied the motion, stating, "New West successfully pursued its unique claim against LAUSD—that LAUSD improperly withdrew its facilities offer of space at Fairfax High School. That New West relied on Education Code section 47614, which is based on a public interest in sharing of facilities between school districts and charter schools, to enforce its rights does not change the fact that the benefit conferred was solely the provision of a school facility *for New West*. This action did not test the validity of section 47614, the merits of the charter school program, or provide any benefit to the charter schools to which LAUSD failed to provide space." The court also concluded that, as New West had sought over $1 million in damages, its attorney fees were not out of proportion to its stake in the litigation, so the burden of the litigation did not render an award of attorney fees appropriate.

---

[9] The court rejected New West's eleventh-hour request to submit evidence of its costs to provide its own M&O at Fairfax.

### 10. *Appeals*

New West filed a timely notice of appeal from the rulings on damages and attorney fees. LAUSD timely cross-appealed the ruling on damages. However, LAUSD has since abandoned its cross-appeal, leaving only New West's appeal.

## ISSUES ON APPEAL

The issues on appeal raise the question of the proper measure of damages and whether private attorney general attorney fees are justified in this case. As to damages, we conclude that the proper measure in this case is the contract standard of benefit of the bargain. As to attorney fees, we conclude the trial court did not err in denying New West attorney fees under the private attorney general statute, as the criteria set out in Code of Civil Procedure section 1021.5 have not been satisfied. We will therefore modify the judgment to award damages to New West under the proper standard and otherwise affirm.

## DISCUSSION

### 1. *Damages*

In considering damages, we first consider the legal measure of damages to be awarded. We then turn to the proper way to determine the value of the elements considered in that measure.

#### a. *Measure of Damages*

The parties disagree on the standard of review to be applied to the trial court's ruling that the appropriate measure of damages is the difference between the rental values of the promised school (Fairfax) and the school received (Pico). New West argues that the trial court's choice of a particular measure of damages is subject to de novo review, while LAUSD argues that the choice of a particular measure of damages is a matter of trial court discretion, reviewable only for an abuse of discretion. Both parties are correct. The trial court's choice among several legally permissible measures of damages, under the specific circumstances of the case, is a matter of discretion. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873 [274 Cal.Rptr. 168].) However, whether a certain measure of damages is permissible given the legal right the defendant has breached, is a matter of law, subject to de novo review. (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 691 [21 Cal.Rptr.3d 732].)

In this case, the court chose to calculate damages on a breach of contract measure. This did not constitute an abuse of discretion. Indeed, when the trial court granted the writ of mandate, it did so because it expressly found LAUSD's withdrawal of the Fairfax offer constituted a breach of contract as well as a breach of its statutory duty to provide facilities. The proper measure of damages for a breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.)

■ Contract damages compensate a plaintiff for its lost expectation interest. This is described as the benefit of the bargain that full performance would have brought. (*Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 298 [44 Cal.Rptr.3d 284].) Contract damages "awarded should, insofar as possible, place plaintiff in the same position he would have been had the contract been performed, but he should not be awarded more than the benefit which he would have received had the promissor performed." (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 123 [135 Cal.Rptr. 802].) ■ In the specific context of a lessor failing to deliver the promised premises, the proper measure of damages "is the difference between the agreed rent and the rental value of the premises during the term of the lease."[10] (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362].)

In this case, if LAUSD had performed the contract, New West would have colocated at Fairfax. New West would have received the value of colocating at Fairfax, but would have paid all expenses associated with colocating at Fairfax. Thus, the difference between the value of colocating at Fairfax and the costs of colocating at Fairfax constitutes the proper measure of damages.[11]

---

[10] Out-of-pocket loss may also be a proper measure of contract damages, when the buyer has obtained cover. (Cf. Cal. U. Com. Code, § 2712.) The trial court's decision to not use this measure of damages, given New West's failure of proof and the court's determination that Pico was inferior to Fairfax, does not constitute an abuse of discretion.

[11] Arguably, the value of colocating at Fairfax *in particular*, less the costs associated with colocating at Fairfax *in particular*, is the amount of damages to which New West is entitled for the breach of the Fairfax *contract*, while the breach of LAUSD's *statutory duty* would be calculated by the value of colocating at a *reasonably equivalent facility* less the costs associated with colocating at a *reasonably equivalent facility*. However, both parties performed their damages calculations on Fairfax or a hypothetical equivalent to Fairfax itself. In other words, by the time damages were at issue, New West had abandoned any suggestion that the Fairfax offer had not satisfied LAUSD's statutory duty to provide its students reasonably equivalent facilities.

### b. *Value of One-year Colocation at Fairfax*

The trial court concluded, based on Pike's evaluation, that the value of one year of colocation at Fairfax is $470,000. New West contends that this value is erroneous and that the trial court was required to calculate the value of colocation at Fairfax under Evidence Code section 824.

The contention is easily rejected.[12] The Evidence Code provides "special rules of evidence applicable to any action in which the value of property is to be ascertained." (Evid. Code, § 810, subd. (a).) This applies to determinations of the market value of any interest in real property. (Evid. Code, § 811, subd. (a).) The Evidence Code permits consideration of, for example, rentals of comparable properties, in determining the value of a leasehold interest. (Evid. Code, § 818.) It provides that, when there "is no relevant, comparable market," the value "may be determined by any method of valuation that is just and equitable." (Evid. Code, § 823.)

It is in this framework that Evidence Code section 824 appears. It provides that "a just and equitable method of determining the value of nonprofit, special use property, as defined by Section 1235.155 of the Code of Civil Procedure, for which there is no relevant, comparable market, is the cost of purchasing land and the reasonable cost of making it suitable for the conduct of the same nonprofit, special use, together with the cost of constructing similar improvements." (Evid. Code, § 824, subd. (a).) Depreciation is not to be considered in the cost of improvements. (Evid. Code, § 824, subd. (b).)

There are at least three reasons why Evidence Code section 824 does not govern the valuation of colocation at Fairfax. First, by its express terms, Evidence Code section 824 applies only to nonprofit, special use properties as defined in Code of Civil Procedure section 1235.155. That section defines nonprofit, special use property to mean "property which is operated for a special nonprofit, tax-exempt use such as a school, church, cemetery, hospital, or similar property. *'Nonprofit, special use property' does not include property owned by a public entity*." (Italics added.) As Fairfax, and, indeed, *any* district facilities to which New West would be entitled under Education Code section 47614, are owned by a public entity, Evidence Code section 824 does not apply.

Second, Evidence Code section 824 applies only to nonprofit, special use properties "for which there is no relevant, comparable market." New West's

---

[12] The trial court rejected the contention on procedural grounds, in that New West did not argue that Evidence Code section 824 applied in its opening brief on damages. While this was not error, we prefer to address the contention on its merits.

opening brief on damages was based on Pike's report which determined a value, based on a market analysis, for facilities similar to that of Fairfax. New West cannot be heard to argue that there is no relevant, comparable market for school facilities when it submitted an entire expert report which conducted such a market analysis.

Third, Evidence Code section 824 excludes depreciation from its calculation. In other words, an Evidence Code section 824 valuation determines the cost of constructing a *brand-new middle school*, with all necessary facilities. But, under Education Code section 47614, subdivision (b), charter school students are to be accommodated in facilities "reasonably equivalent to those in which the students would be accommodated if they were attending other public schools of the district." New West would not be entitled to damages based on the value of a new middle school unless its students would have been accommodated in new middle schools had they attended public school in the district. New West produced no such evidence. There is no basis for an award of damages which would compensate New West for the loss of *better* facilities than those to which its students were statutorily entitled.

Having disposed of New West's Evidence Code section 824 argument, we turn to the appropriate rental value of Fairfax. The trial court accepted Pike's figure of $470,000. This is clearly supported by the evidence. On appeal, in apparent pursuit of its Evidence Code section 824 argument, New West asserts that there is no evidence in the record that the market cost of renting a hypothetical Fairfax facility was $470,000. New West is mistaken; Pike's initial report made precisely that determination. Indeed, in its opening trial court brief on damages, New West specifically represented that $470,000 was "the likely market rent of what New West would have paid as of the valuation date for similar facilities and amenities to Fairfax in the commercial marketplace." Now that the trial court has adopted this valuation, New West cannot disclaim it.

■ New West's real complaint is that the trial court omitted any further damages for the intangible value of an integrated campus. The trial court rejected, as wholly speculative, New West's theory that the value of an integrated campus can be based on the differential cost of private school tuition. We agree. (See fn. 4, *ante.*) Speculative damages may not be recovered (Civ. Code, § 3301; see, e.g., *Toscano v. Greene Music, supra,* 124 Cal.App.4th at p. 694), and New West's determination that the value of an integrated campus exceeds $460,000 is unsupported.[13]

---

[13] We also note that while the value of an integrated campus has some intangible value, there is a, perhaps offsetting, intangible value to being in one's own school, rather than colocating in facilities with students of another school and, indeed, different grade levels.

---

c. *Costs of Colocating at Fairfax*

It is undisputed that the cost of colocating at Fairfax would include, at a minimum, the pro rata share of $6,378. The main dispute in this case is whether the colocation costs should also include M&O costs.

 This much is undisputed: When a charter school is provided district facilities, the charter school is responsible for ongoing M&O. (Cal. Code Regs., tit. 5, § 11969.4.) New West argues that, since it is responsible for the M&O, it would not be required to pay LAUSD any amount for M&O. New West presented no evidence regarding whom it would hire to perform M&O if it were colocated at Fairfax, nor did it present evidence of any M&O costs it would incur.

In contrast, LAUSD provided evidence of its method for calculating a charter school's share of M&O expenses at a colocation, which resulted in a total of $276,266 in connection with colocation at Fairfax. LAUSD also offered evidence that an association of charter schools, the California Charter Schools Association (CCSA),[14] agreed that, in cases of colocation, the LAUSD would provide M&O and the CCSA member charter school would pay its share of the M&O expenses.

LAUSD also argued persuasively that, at least with respect to shared facilities, there is no way for the M&O services themselves to be provided by both the charter school and the LAUSD. New West, for example, had no response to the hypothetical question of how one could repair a fraction of a broken window. We similarly ask how New West could clean only New West's students' footprints from a shared hallway, provide pest control service for only those days when it uses the school gym, remove only its students' trash from the cafeteria bins, or pay only for the lighting and water its students use. It is apparent that M&O for any part of the school not used exclusively by New West must be performed by *either* New West or the LAUSD, and since the LAUSD would be using the lion's share of the space and accepting the lion's share of the charges,[15] it is certainly reasonable for LAUSD to perform the M&O and obtain partial reimbursement from New West. This is particularly true when New West offered no counterproposal.

---

[14] CCSA is an amicus curiae in this case. New West is not a member of CCSA.

[15] According to the Fairfax offer, New West would have used 10.4 percent of the classrooms at Fairfax; it was therefore assumed that its use of the nonclassroom space at Fairfax would also be 10.4 percent (this is true even though it would be granted use of shared facilities on a 50/50 time-share basis). LAUSD calculated M&O costs on a square footage basis; New West's obligation under the Use Agreement would have been for its exclusive use classroom square footage plus 10.4 percent of the nonclassroom space at Fairfax.

■ New West argued, in general terms, that LAUSD's M&O fees were too high, but challenged no particular line item of M&O as unfairly calculated, or incorporating charges for which LAUSD should alone be responsible. In short, LAUSD provided persuasive evidence of its calculation of M&O expenses, while New West provided no evidence to the contrary.[16] The trial court's comments at the hearing indicate that it accepted LAUSD's calculation of M&O expenses. On this record, there was no error.

Thus, New West's damages are the value of colocation at Fairfax ($470,000) less the costs of colocation ($6,378 + $276,266), for a total damage calculation of $187,356. We will modify the judgment accordingly.[17]

## 2. *Private Attorney General Attorney Fees*

"Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (Code Civ. Proc., § 1021.5.)

■ Thus, in order to award attorney fees to a prevailing party, courts consider whether (1) the litigation resulted in the enforcement of an important

---

[16] We again note that the M&O expenses included charges for utilities. New West's argument that it should not be required to pay a penny for M&O implies that New West believes LAUSD should keep the lights on for free in the classrooms allocated to New West's exclusive use.

[17] New West argues that it should also be awarded its costs associated with "renting, furnishing, and improving" Pico, as it would not have incurred these costs had LAUSD not breached its statutory duty. We disagree. New West seeks the benefit of its Fairfax bargain *plus* the costs it expended on Pico. New West is not permitted to obtain damages that would put it in a *better position* than had LAUSD performed. New West was entitled to $470,000 worth of facilities from LAUSD for the price of $282,644, nothing more. Our modification of the damages award gives New West the benefit of this bargain. Under no circumstances would New West be entitled to $470,000 worth of facilities from LAUSD for the price of $282,644, *plus the free use of Pico.*

Amicus curiae CCSA argues that "the slap on the wrist that the trial court gave LAUSD in this case has not motivated LAUSD to change its ways," as part of an implicit argument that a greater damages award is necessary to motivate statutory compliance on the part of LAUSD. In the absence of any statutory provision setting forth a punitive measure of damages for a school district's failure to comply with Education Code section 47614, there is no legal basis for an increased award of damages under the facts presented in this case.

right affecting the public interest; (2) a significant benefit has been conferred on the general public or a large class of individuals; and (3) the necessity and financial burden of private enforcement renders the award appropriate. (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 951–952 [70 Cal.Rptr.3d 372, 174 P.3d 192].) Each of the three elements must be established in order to justify a fee award. (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 6 [232 Cal.Rptr. 697].) "The decision whether the claimant has met his burden of proving each of these prerequisites and is thus entitled to an award of attorney fees under [Code of Civil Procedure] section 1021.5 rests within the sound discretion of the trial court and that discretion shall not be disturbed on appeal absent a clear abuse."[18] (*Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1044 [114 Cal.Rptr.2d 787].)

In determining whether a significant benefit has been conferred on the general public or a large class, courts must perform "a realistic assessment of all the relevant surrounding circumstances." (*Ryan v. California Interscholastic Federation, supra*, 94 Cal.App.4th at p. 1044.) In this case, the trial court determined that New West pursued only its unique claim based on the withdrawal of the Fairfax offer. The court determined that the benefit conferred in this litigation was only damages for the failure to provide a facility to New West alone. The court stated, "This action did not test the validity of section 47614, the merits of the charter school program, or provide any benefit to the charter schools to which LAUSD failed to provide space."

The trial court was indisputably correct. On appeal, New West argues that its "victory in this case enforced charter schools' and their students' right to occupy school district facilities." It states that the trial court's issuance of the writ and order for the payment of damages "in effect forced LAUSD to cease its practice of refusing to provide campuses to charter schools under Proposition 39, and established a charter school's right to enforce such orders and secure damages for a failure to equitably share public school facilities." It further states that the trial court's orders "forced LAUSD to modify its long-standing practice of denying campuses to charter schools, a practice that would not have changed had New West not pursued this lawsuit." Finally,

---

[18] In *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278], the Supreme Court held that, when an appellate court publishes an opinion, the Court of Appeal may be in a better position than the trial court to determine whether an award of fees is appropriate, and may therefore make the determination in the first instance. While we perform an abuse of discretion analysis in this case, our result would be the same if de novo review applied.

New West states that this case "began as a simple writ petition seeking an order to provide New West's students with public school facilities, and evolved into a test case regarding whether Education Code Section 47614 can ever be effectively enforced."

New West greatly overstates the significance of its victory. It established that LAUSD should not have withdrawn its offer of colocation at Fairfax under both contract principles and Education Code section 47614. New West also received damages for LAUSD's breach. The writ and damages in this case do not enforce charter school students' rights to district facilities in general. Those rights are established by Education Code section 47614, the implementing regulations, and existing case law. (See, e.g., *Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986 [30 Cal.Rptr.3d 648]; *Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185 [5 Cal.Rptr.3d 86].) This case was not a "test case" regarding whether Education Code section 47614 could be enforced. Both appellate cases cited above impliedly confirmed the right to writ relief to enforce school districts' obligations under Education Code section 47614. (*Ridgecrest Charter School v. Sierra Sands Unified School Dist., supra*, 130 Cal.App.4th at pp. 991–992; *Sequoia Union High School Dist. v. Aurora Charter High School, supra*, 112 Cal.App.4th at p. 195.) Indeed, LAUSD never challenged writ relief as an appropriate procedure, nor did it contest the trial court's ability to award damages to New West under Code of Civil Procedure section 1095. Nor did this case "force[] LAUSD to modify its long-standing practice of denying campuses to charter schools." Indeed, there was no ruling regarding the existence or permissibility of such an alleged practice. This case was simply about whether LAUSD was permitted to withdraw the Fairfax offer and, if it was not, the damages New West suffered. There was no benefit to the general public or a large class.

■ The trial court also did not abuse its discretion in determining that the necessity and financial burden of private enforcement did not render an award of attorney fees appropriate. In considering this element, an award of fees "is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter." (*Ryan v. California Interscholastic Federation, supra*, 94 Cal.App.4th at p. 1044.) In this case, New West claims to have incurred some $266,000 in attorney fees,[19] and had sought a recovery in excess of $1 million. The court did not err in concluding that New West's expense was not disproportionate to its stake in the case.

[19] New West did not actually incur the fees.

## *DISPOSITION*

The judgment is modified to reflect a damages award of $187,356. As modified, the judgment is affirmed. The order denying attorney fees is affirmed. Each party shall bear its own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

Petitions for a rehearing were denied September 8, 2010, and on September 1, 2010, and September 8, 2010, the opinion was modified to read as printed above.