Filed 1/25/23  Scrapit v. Del Angel Recycling Corp. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| SCRAPIT, LLC et al., <br><br> Plaintiffs, Cross-defendants and Respondents, <br><br> v. <br><br> DEL ANGEL RECYCLING CORPORATION et al., <br><br> Defendants, Cross-complainants and Appellants. | B313691 <br><br> (Los Angeles County Super. Ct. No. LC102732) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Conditionally affirmed as modified.

Crawford Law Group, Roza Crawford and Daniel A. Crawford for Defendants, Cross-complainants and Appellants.

Marchetti Law and Frank E. Marchetti for Plaintiffs, Cross-defendants and Respondents.

_____

# INTRODUCTION

Following a bench trial and a court-ordered forensic accounting, respondents Scrapit, LLC (Scrapit), its owner Antoun Chiha, and his wife Sandra Chiha were awarded $175,454.67 in damages payable by appellants Ricardo Del Angel Bandala (Bandala), Elfego Del Angel (Del Angel), Luis Suarez and Makina, Inc. (Makina). Those damages arose from the dissolution of the parties' metal recycling business partnership.

Appellants do not challenge any of the trial court's liability findings, including that they breached the partnership agreement and their fiduciary duties to respondents, and fraudulently induced respondents to invest in the partnership. Nor do appellants challenge the trial court's order dissolving the partnership as of March 13, 2015, the court's conclusion that Scrapit held a one-third interest in the partnership, or the findings of the court-appointed forensic accountant.

Appellants contend only that the trial court erred in measuring damages. Based on the forensic accounting report, the trial court awarded respondents Scrapit's one-third share of the adjusted net profit of the partnership through the dissolution date, plus a one-third share of the business's inventory as of that date. We agree with appellants that this was error, because among other things (1) the adjusted net profits calculation incorporated the value of the inventory, meaning the damages award double-counted the value of the inventory, and (2) the damages calculation included a partnership asset without accounting for offsetting partnership liabilities.

The parties dispute what the appropriate alternative or corrected damages number should be. For the reasons explained below, we find respondents' arguments concerning the calculation

2

of damages unpersuasive.  Instead, we agree with appellants that the proper measure of damages is Scrapit's one-third interest in the partnership's net assets (total assets minus total liabilities as of the dissolution date), a formula that comports with the applicable Corporations Code[1] provisions.

Appellants, however, incorrectly contend that the partnership's net assets equal the partnership's adjusted net profit.  Those are two very different things.  Assets minus liabilities is the partnership's net assets; adjusted net profit is the net income generated by the partnership during a specified period.  The undisputed forensic accountant report calculated total partnership assets of $731,358.62 and total partnership liabilities of $253,213.30 as of the dissolution date.  Subtracting the liabilities from the assets gives a net asset figure of $478,145.32 (a figure the forensic accountant's report explicitly includes as the partnership's total equity).  Scrapit's one-third interest of this amount is $159,381.77.

Accordingly, we conditionally affirm the judgment as modified to award $159,381.77 in damages subject to respondents' consent to this modification pursuant to California Rules of Court, rule 8.264(d).  If respondents do not timely file a consent in the Court of Appeal to this reduction, the damages award is to be reversed and the matter remanded for a new trial limited to determining the amount of damages, as liability has been established.  (See Cal. Rules of Court, rule 8.264(d).)

---

[1] Unspecified statutory references are to the Corporations Code.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. The Parties Form a Partnership[2]

In September 2012, Del Angel and Bandala started operating a metal recycling business through a partnership with Makina (which was owned by Suarez) and Eduardo Barajas Hernandez. Bandala and Del Angel jointly held one partnership unit.

Shortly thereafter, Sandra and Antoun Chiha began discussing with Bandala and Del Angel the possibility of joining the partnership. Bandala informed Sandra Chiha that the business either had, or was soon going to have, all of the necessary permits and licenses. Bandala and Del Angel told the Chihas that each of the three partners had invested $50,000 into the business. They also told the Chihas that all of the business's equipment was owned free and clear and that the only debt of the partnership was a $13,000 loan which they wanted the Chihas to pay off as part of their investment.

The Chihas joined the partnership through Scrapit, a company owned by Antoun Chiha. The Chihas began working at the business in early November and a partnership agreement was signed on December 12, 2012. Under the partnership agreement, there were four partners each holding a 25 percent interest in the partnership: Bandala,[3] Makina, Hernandez and

---

[2] The factual summary is taken primarily from the statement of decision issued by the court on May 4, 2021. Appellants do not dispute any of the court's factual findings.

[3] Bandala held his interest in the partnership for himself and Del Angel.

4

Scrapit. Scrapit invested $50,000 in the business, as required by the partnership agreement.

Sandra Chiha, who had years of experience in the recycling industry, initially managed the business's operations. She received $500 per week for her work, Bandala received $500 per week, and Antoun Chiha and Del Angel each received $300 per week. Suarez and Hernandez did not work at the business and did not receive any regular payments.

## B. Disputes Arise Among the Parties and the Chihas Stop Participating in Business Operations

Soon after the Chihas started working at the business they learned that appellants had not applied for many required licenses and permits, including a scrap metal dealer permit. They also found out the business had debts that appellants had not disclosed. Because it did not have a scrap metal dealer permit, the business closed in late November 2012, and did not reopen until mid-January 2013.

The Chihas became suspicious that the other partners had not invested $50,000 as had been represented, so they requested each partner submit proof of their investment. Suarez presented evidence that he had invested $50,000. Bandala and Del Angel were not able to prove their full investment, but the partners nonetheless voted to approve a full partnership share for them because Del Angel had put labor into the business; the Chihas agreed to this in part because they did not believe the business could operate without Bandala and Del Angel. Hernandez was unable to show proof that he had invested $50,000 and the partners never voted to approve his investment. As a result, Scrapit's partnership share (as well as that of the other approved partners) effectively increased from one-quarter to one-third.

5

When the business resumed operations in mid-January 2013, Sandra Chiha again started receiving $500 per week and Antoun Chiha again started receiving $300 per week. According to Del Angel, at this time both he and Bandala began receiving $800 per week. Antoun Chiha testified that he never approved any salary increases and the issue was never discussed at any partnership meeting.

In late February 2013, the Chihas stopped working at the business. Sandra Chiha testified that she did so because she was concerned that the unethical work practices going on at the business would damage her reputation in the industry. Antoun Chiha testified that he saw the partnership engage in practices he believed were illegal.

In March 2013, Del Angel sent a letter questioning Scrapit's investment in the partnership. Sandra Chiha was unable to provide a full accounting because Suarez had taken records for the time period from November 2012 through January 2013. Suarez had taken a banker's box of financial records and the Chihas learned that he had given it to the partnership's accountant. The Chihas were subsequently refused access to the documents; the daily cashier sheets for January 19 and 20, 2013, which Sandra Chiha testified would have shown additional cash contributed by the Chihas on behalf of Scrapit, were never produced.

On May 10, 2013, Antoun Chiha wrote to the partners to demand repayment of Scrapit's $50,000 investment and $10,000 owed on a $20,000 loan Scrapit made to the business. The other partners refused to buy out Scrapit's partnership interest. After some brief and unproductive back and forth, any discussion

regarding the other partners buying out Scrapit's partnership interest ceased.

## C. The Parties Sue Each Other and the Matter Is Tried

Respondents filed suit on March 13, 2015.[4]  On February 22, 2016, they filed an amended complaint which became the operative complaint for the lawsuit.  Scrapit asserted claims against appellants for breach of partnership agreement, breach of fiduciary duty, dissolution of partnership, imposition of constructive trust, and accounting.  The Chihas asserted claims against appellants for breach of employment agreement, common count for labor provided, and Labor Code violations.  Respondents jointly asserted claims against appellants for intentional misrepresentation and negligent misrepresentation.

On September 16, 2016, appellants filed a cross-complaint for breach of written contract, intentional breach of fiduciary duty, fraud, negligent misrepresentation, and conversion.

The matter was tried to the court in January 2018.[5]

_____

[4] After the litigation commenced, Bandala, Del Angel and Suarez stopped using the name Del Angel Recycling and began doing business through a newly formed entity called United Scrap Force, Inc.

[5] The judgment and statement of decision both state that the court heard evidence on January 11, 12, 16 and 17, 2018.  However, the transcript of the proceedings on those days does not contain all of the testimony referenced in the statement of decision, including the in-court testimony of Bandala and Abigail Del Angel.  Thus, it appears the court heard evidence on an additional day.  That additional day was apparently January 18, 2018; that is what appellants state in their opening brief.  However, appellants' designation of the record on appeal only

On March 20, 2018, the trial court announced its tentative ruling in favor of respondents on most of their claims and against appellants on all of their claims, ordered that the partnership was dissolved as of March 13, 2015, and ordered the parties to obtain an accounting of the partnership through that date, with the cost of the accounting to be paid from partnership funds.

## D. The Court Orders a Forensic Accounting

On November 1, 2018, the court issued an order appointing accountant Tiffany Tso "to perform a forensic accounting of Del Angel Recycling Corporation."[6] The order directed Tso to "account for all money in and out of the company from November 5, 2012[,] through March 13, 2015[,] and account for all revenue or income from any source (cash or otherwise) and all payments including payroll, capital improvements/replacements, debts assumed by the business, payments on debts, 'dividends' or payments to partners/investors, etc." The order further directed Tso to "determine a present day valuation of the business and its assets." The order directed appellants "to make all their books and records available for access and review by Ms. Tso."

Tso submitted her report, along with an authenticating declaration, in January 2021.[7] Tso noted in her declaration that

requested the preparation of transcripts for January 11, 12, 16 and 17, 2018.

[6] The court had, in June 2018, appointed a different accountant but dismissed that accountant in October 2018 because he was not making enough progress.

[7] Tso finished her report well before January 2021, but appellants did not pay her fees as ordered. On September 30, 2020, the court issued an order directing appellants to pay Tso

8

"the business changed corporate entities and has operated under the new corporation United Scrap Force, Inc. since 2016." As to her efforts to determine a present-day valuation of the business, Tso stated "[w]e have received literally none of the information needed for a present-day valuation of the business and therefore we are unable to prepare the valuation analysis. For example, we do <u>not</u> have tax returns, financial statements, general ledgers, bank statements, check copies, accounts receivable listings, inventory listings, fixed asset listings, or any other records since year 2015."

As to her accounting of the finances of the business from November 5, 2012, through March 13, 2015 (accounting period), Tso summarized that "the company generated <u>estimated</u> net profits of $76,364 during the accounting period, and that it invested in inventory of approximately $450,000 which remained at the end of the accounting period prior to being transferred into the successor corporate entity, United Scrap Force, Inc." Tso further stated that "because the [c]ompany's business is largely operated on a cash basis, with that cash never being deposited to the bank, the veracity of historical transactions is subject to the quality of the contemporaneous records which were kept throughout the accounting period. In that regard we found there were several missing records and that the historical general ledgers which were kept in QuickBooks were incomplete."

Schedule 1 of the report summarized the inflows and outflows of funds during the accounting period. According to that

$15,000 by a date certain and indicated that if the amount was not paid by then it would appoint a receiver for the business. Appellants subsequently paid Tso's fees and she issued her report.

schedule, the partnership received $10,387,822.85 in income and incurred $9,711,369.86 for "[c]ost of [g]oods [s]old" (primarily to purchase the materials it sold), resulting in a gross profit of $676,452.99. The partnership incurred $217,435.71 in other expenses, resulting in net ordinary income of $459,017.28. Finally, adding "[o]ther income" of $13,000.02,[8] and subtracting $539,461.96 in "[e]xpenses [p]aid [v]ia '[p]etty [c]ash' "[9] and $266,968.98 in "[p]ayroll [e]xpenses [p]aid [v]ia '[p]etty [c]ash' "[10] yielded an adjusted net cash flow of negative $334,413.64.

Schedule 1 of the report valued inventory on hand as of the end of the accounting period at $450,000. In a note regarding this valuation, the report explained that "[g]iven the total lack of information regarding inventory levels at any date, we relied on an industry ratio . . . to estimate inventory level at the end of accounting period." The report arrived at the $450,000 valuation by dividing the cost of the goods purchased during 2014 ($4,215,293) by an "[i]nventory [t]urnover [r]atio" (9.4 percent) and rounding up by approximately $1,565.

---

[8] This amount was from 2012, and likely reflects the payment of a $13,000 loan to the partnership, which payment Scrapit made as part of its investment in the partnership; also included was $0.02 in interest income.

[9] A breakdown of these cash payments was included on schedule 1B of the report; the largest amounts were for facility rent ($234,852.31), "[s]upplies" ($197,000.01), "[m]isc." ($34,860.77), equipment rent ($32,140), and accounting fees ($23,150).

[10] A breakdown of these cash payments was included on schedule 1D of the report.

Schedule 1 also listed capital expenditures and equipment purchases during the accounting period totaling $120,240, adjusted for the value of equipment contributed by Bandala ($37,668.65), Makina/Suarez ($15,849) and Hernandez[11] ($27,500), for "[t]otal [c]apital [e]xpenditures/[e]quipment [p]urchases" of $39,222.35.

In schedule 1, the report combined the net negative cash flow (-$334,413.64), with the value of the inventory on hand ($450,000) and then subtracted the capital expenditures/equipment purchases ($39,222.35) to calculate an "[a]djusted [n]et [p]rofit" of $76,364.01.

The report also included, as schedule 2, a summary of the assets and liabilities of the partnership as of March 13, 2015. Based upon financial data prepared by the partnership, as corrected by records reviewed by the forensic accountant and the accountant's estimate of inventory on hand in March 2015, the report concluded the partnership's total assets were $731,358.62 and its total liabilities were $253,213.30, resulting in "[t]otal [e]quity" of $478,145.32.[12]

---

[11] Hernandez is identified as "Eduardo Barajas" in the accounting report.

[12] Schedule 2 also sets forth the partnership's assets and liabilities based solely on the financial data prepared by the appellants; according to those records, the partnership's total assets were $257,075.46 and its total liabilities were $253,213.30, yielding "[t]otal [e]quity" of $3,862.16. The biggest difference between the accountant's findings and the appellants' data was in the inventory category: the accountant determined that the business had $450,000 in inventory while the appellants' data showed $0 worth of inventory.

11

## E. The Statement of Decision and Judgment

On May 4, 2021, the court issued a detailed statement of decision. The following day, it issued a lengthy judgment that summarized the court proceedings and the accounting, and found as follows: Bandala/Del Angel and Hernandez breached their contractual obligations and fiduciary duties by failing to invest $50,000 into the partnership; Bandala, Del Angel and Makina/Suarez breached the partnership agreement and their fiduciary obligations by failing to provide regular accountings of the partnership's business; Bandala and Del Angel breached the partnership agreement and their fiduciary duties by unilaterally increasing their salaries after February 2013; and appellants negligently and intentionally misrepresented to respondents that they had all the necessary permits and licenses for the metal recycling business and that Hernandez and Bandala/Del Angel had made their required financial contributions, and respondents reasonably relied on these representations in contributing $50,000 to the partnership.[13]

The court found that Scrapit held a one-third share of the partnership, and that dissolution of the partnership was "appropriate and necessary under the terms of the [p]artnership [a]greement as well as pursuant to Corporations Code [section] 16801."[14] While the judgment did not state a dissolution date,

---

[13] The court found against the Chihas on their causes of action for breach of employment agreement, common count for labor provided, and Labor Code violations.

[14] Section 16801, subdivision (5) authorizes a court to order a partnership to be dissolved on the application of a partner when, among other grounds, "[a]nother partner has engaged in

12

the court in a previous order had set the dissolution date as March 13, 2015.

With respect to damages, the judgment indicated that the court was basing its award on the forensic accounting and stated as follows:

"The [c]ourt finds that the assets of Del Angel Recycling, Inc., aka United Scrap Force, Inc. are to be divided equally between the three partners that actually invested in the business and secured their partnership interests. Accordingly, Scrapit, LLC is entitled to one-third of the assets of Del Angel Recycling, Inc. The [c]ourt determines that [appellants] did not cooperate with Ms. Tso and her efforts to obtain a current valuation of the assets of the business, which business [appellants] were operating in trust for the partnership until its dissolution. Despite this, Ms. Tso was able to determine that Del Angel Recycling, Inc. had profits of $76,364 and inventory of $450,000 in inventory, which totals $526,364." The judgment awarded Scrapit one third of this $526,364, which is $175,454.67.

Following this award, no motions were filed with the trial court regarding any alleged errors in the court's damages calculation.[15] Appellants filed a timely notice of appeal on June 28, 2021.

conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with that partner." (§ 16801, subd. (5)(B).)

[15] The failure to timely move for a new trial ordinarily precludes a party from complaining on appeal that a damages award was excessive. (E.g., *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 759.) Respondents understandably do not

13

## DISCUSSION

### A.    Standard of Review

"An appellant's challenge to damages, depending upon its specific nature, may be subject to a substantial evidence, abuse of discretion, or de novo standard of review.  The question of whether a plaintiff was, in fact, damaged by the defendant's breach of contract is reviewed for substantial evidence.  (See *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873 [274 Cal.Rptr. 168] (*GHK*).)  The question of whether 'a certain measure of damages is permissible given the legal right the defendant has breached, is a matter of law, subject to de novo review.  [Citation.]' (*New West Charter Middle School v. Los Angeles Unified School Dist.* (2010) 187 Cal.App.4th 831, 843 [114 Cal.Rptr.3d 504] (*New West*); see also *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 579 [114 Cal.Rptr. 106, 522 P.2d 666].)  But where the measure of damages is legally permissible, a trial court's choice of that measure, among other legally permissible measures of damages, is reviewed for abuse of discretion.  (*New West*, at p. 843, citing *GHK*, at p. 873.)" (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 583.)

" ' " 'Where [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved

---

argue that rule applies here, because the failure to move for a new trial does not preclude a party from asserting an alleged failure to apply the proper measure of damages.  (*Ibid.*)  The damages issue here turns on the proper measure of damages, and not the credibility of witnesses or conflicting evidence as the facts are undisputed.

in support of the determination of the trial court decision.' " ' [Citation.]" (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1027.)

" 'Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. [Citations.] The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. [Citation.] This is especially true where . . . it is the wrongful acts of the defendant that have created the difficulty in proving the amount of loss of profits [citation] or where it is the wrongful acts of the defendant that have caused the other party to not realize a profit to which that party is entitled.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774-775, quoting *GHK*, *supra*, 224 Cal.App.3d at pp. 873-874; see also *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 402 ["An award of damages computed on a reasonable basis will be upheld even if it is only an approximation"].)

## B.    The Court's Damage Calculation Was Erroneous

Appellants argue the court erred in selecting and applying the measure of damages. Scrapit's causes of action in this matter are subject to the Uniform Partnership Act of 1994 (UPA; § 16100 et seq.). Under the UPA, "A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to do any of the following:

"(1) Enforce the partner's rights under the partnership agreement.

"(2) Enforce the partner's rights under [the UPA] . . . [¶] . . . [¶] . . . .

15

"(3) Enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship."  (§ 16405, subd. (b).)  Accordingly, damages awarded to Scrapit must be based on its rights under the partnership agreement, the UPA or a separate cause of action.

1.    *The Value of the Inventory Was Double Counted*

Appellants first point out that the adjusted net profit calculation incorporates the value of the inventory.  By adding the value of the inventory to the adjusted net profit amount in calculating damages, the $450,000 in inventory was double counted (effectively as $900,000 instead of $450,000).  We agree the court's damages calculation erroneously double-counted the inventory.

Respondents' argument to the contrary is unpersuasive.  They contend that the net profits and inventory valuations determined by the accountant were not "overlapping," and they cite to the declaration of the accountant which stated, in part, "Our findings are that the company generated <u>estimated</u> net profits of $76,364 during the accounting period, and that it invested in inventory of approximately $450,000 which remained at the end of the accounting period prior to being transferred into the successor corporate entity, United Scrap Force, Inc."  The mere fact that these two values are listed in the same sentence, however, does not mean they are completely distinct and do not overlap.  A review of the schedules attached to the forensic accountant's declaration clearly shows the valuation of retained inventory ($450,000) was incorporated in the calculation of adjusted net profit.  If the value of the inventory is not

considered, the business would have incurred a net loss of $373,636, as opposed to a profit, as of the dissolution date.

2. *The Value of the Inventory Was Not Offset By Partnership Liabilities*

Appellants further argue that including the $450,000 inventory amount itself was erroneous, because it effectively awarded Scrapit a one-third share of the partnership's assets without reference to Scrapit's concomitant share of the partnership's liabilities. Given the court's dissolution of the partnership, respondents were entitled to Scrapit's one-third share of the partnership's equity on the dissolution date. Under the code, that equity (what appellants term net assets) is calculated by deducting the partnership's liabilities from its assets. Thus, an award of partnership assets without reference to the related partnership liabilities was error.

Pursuant to section 16801, when a partnership is dissolved "its business shall be wound up." Section 16807, subdivision (a) provides that, "[i]n winding up a partnership's business, the assets of the partnership, including the contributions of the partners required by this section, shall be applied to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors. Any surplus shall be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subdivision (b)." Subdivision (b) of section 16807 provides, in relevant part, that "[i]n settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets shall be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account."

17

Thus, when a partnership is dissolved, each partner is entitled to their share of the equity of the partnership, measured as the value of the partnership's assets less its outstanding liabilities.

Section 16807, subdivision (b) assumes that there will be a "liquidation of the partnership assets," which did not occur in this case. Instead of liquidating the partnership assets, appellants continued to operate the metal recycling business under another name.[16] Respondents argue that, because there was no liquidation, the trial court could award damages without considering the partnership's "alleged debts and liabilities." However, they provide no authority for that proposition nor any cogent argument supporting it. Furthermore, such a result would be contrary to the approach required where a partner leaves a partnership and the remaining partners continue business operations—in other words, what happened here. In that situation the partner who "dissociates" from the partnership is entitled to their share of the net equity of the partnership, as of

---

[16] Section 16803, subdivision (c) provides that "A person winding up a partnership's business may preserve the partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distribute the assets of the partnership pursuant to Section 16807, settle disputes by mediation or arbitration, and perform other necessary acts." Appellants do not contend that they continued operating the business pursuant to section 16803, and there is no dispute they continued the metal recycling business beyond "a reasonable time" needed to facilitate an orderly winding-up within the meaning of section 16803.

18

the date of dissociation, which is the amount a liquidation of the partnership on that date would have yielded.

Under the code, a partner can effect a dissociation by providing the partnership with "notice of the partner's express will to withdraw as a partner." (§ 16601, subd. (1).) In such a situation, "the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price determined pursuant to subdivision (b)." (§ 16701, subd. (a).) That buyout price "is the amount that would have been distributable to the dissociating partner under subdivision (b) of Section 16807 if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership was wound up as of that date."[17] (§ 16701, subd. (b).)

In short, if a partner dissociates but the partnership is not liquidated, the dissociating partner is entitled to recover what it would have recovered had the partnership been liquidated or sold

---

[17] The partnership agreement is consistent with these provisions. It provides that, upon the withdrawal of a partner, "the remaining [p]artner . . . may continue the [p]artnership business by purchasing the interest of the other [p]artner in the assets and good will of the [p]artnership." The agreement further provides that the purchase price is "the net book value of the interest as shown on the last regular accounting of the [p]artnership preceding the dissolution together with the full unwithdrawn portion of the deceased, withdrawing, or terminated [p]artner's distributive share of any net profits earned by the [p]artnership between the date of the accounting and the date of dissolution of the [p]artnership."

as a going concern—namely, their share of the equity of the partnership, measured as the value of the partnership's assets less its outstanding liabilities. Here, the court erroneously measured damages by only implementing one part of the foregoing method, namely the valuation of one partnership asset (inventory),[18] while not accounting for the departing partner's obligation to share in the partnership's outstanding liabilities.

## C. The Parties' Alternative Damages Theories Are Legally Unsupportable

Given our finding that the court's calculation was erroneous, both parties urge we adopt alternative legal theories of damages and apply them to the undisputed facts here. We discuss these theories below.

### 1. *Non-dissolution Claims*

Respondents argue that awarding them Scrapit's share of the partnership's inventory and the adjusted net profit should be affirmed because it was a proper measure of damages under their causes of action for breach of contract, breach of fiduciary duty, and negligent and intentional misrepresentation. Respondents, however, fail to explain how any of these causes of action would allow them to recover, as damages, Scrapit's share of the inventory without a deduction for its share of the partnership's liabilities.

Turning first to the breach of contract claim, "[d]amages awarded to an injured party for breach of contract 'seek to approximate the agreed-upon performance.' [Citation.] The goal

---

[18] We recognize that inventory was not the only asset held by the partnership. For example, the partnership owned equipment and held money in bank accounts and cash.

is to put the plaintiff 'in as good a position as he or she would have occupied' if the defendant had not breached the contract. [Citation.] In other words, the plaintiff is entitled to damages that are equivalent to the benefit of the plaintiff's contractual bargain. [Citations.]" (*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 967-968.) Here, the benefit of the bargain expressed in the partnership agreement was that the partners would share in the net profits of the business, as well as both the assets and the liabilities of the partnership. Scrapit fails to explain how its share of the partnership's assets alone is a proper measure of damages for appellants' breach of the partnership contract.

Similarly, respondents fail to articulate how Scrapit's share of the inventory would properly measure damages for breach of fiduciary duty or negligent and intentional misrepresentation. The court found appellants breached their fiduciary duties by failing to make their promised investments into the partnership, failing to provide regular accountings of the partnership's business, and increasing Bandala's and Del Angel's compensation for working for the business. The court also found that respondents relied on misrepresentations by appellants in deciding to join the partnership and make their financial contribution. Respondents make no argument how awarding them Scrapit's share of the partnership's inventory through the date of dissolution reasonably measures their losses under any of these claims, and nothing in the court's statement of decision or the judgment indicates the court intended the inventory amount as a measure of those damages for those breaches.

Finally, respondents argue the court's measure of damages was proper in light of appellants' failure to cooperate with the

21

accounting, which impacted the reliability of the accountant's findings. The court stated in the judgment that appellants "did not cooperate with Ms. Tso and her efforts to obtain a current valuation of the assets of the business, which business [appellants] were operating in trust for the partnership until its dissolution."[19] Appellants do not dispute this finding, and there is substantial evidence to support it. However, there appears to be no connection between the award of the inventory amount and appellants' lack of cooperation. The court did not explain (nor appear to intend) any such connection in the judgment or its lengthy statement of decision, nor do respondents explain it on appeal.

### 2. *Net Profits*

Appellants argue the court should have awarded Scrapit solely a one-third interest in the adjusted net profit of $76,364, namely $25,454.67, claiming this is the amount provided for upon liquidation under section 16807, subdivision (b) and the partnership agreement. This argument misreads section 16807, subdivision (b) and the partnership agreement.

In support of their contention, appellants point to a portion of section 16807, subdivision (b) stating that "[i]n settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets shall be credited and charged to the partners' accounts." (§ 16807, subd. (b).) According to appellants, "profits" as used in that statutory language means net adjusted income. But "the profits [or] losses

---

**19** The judgment also stated that Tso reported she was unable to accurately calculate the current value of United Scrap Force, Inc. because of the lack of financial information.

22

that result from the liquidation of the partnership assets" are not positive or negative income generated while the partnership was in operation. They are instead the positive or negative difference remaining upon liquidation/windup—in other words, what is left once the partnership's assets are applied to discharge its liabilities. (See, e.g., § 16807, subd. (a).)

Appellants' reliance on paragraph 7 of the partnership agreement is equally misplaced. That paragraph provides that "[a]ny net profits or losses that may accrue to the [p]artnership shall be distributed to or by the [p]artners." This provision governs on-going operations, and not what occurs in a dissolution and/or dissociation. A separate provision, paragraph 21, addresses that circumstance and is in accord with section 16807, subdivision (b). In particular, paragraph 21 provides that the partnership is to be liquidated and then "the debts paid[ ] and the surplus divided equally among the [p]artners."

Thus, we reject appellants' contention that the adjusted net profit calculation equates to the amount required by section 16807. In particular, this proposed measure errs by using figures from an income statement (which shows the partnership's financial performance over a period of time) instead of the appropriate figures from the balance sheet showing the assets and liabilities necessary to calculate a distribution under section 16807.

## D. Reversal Is Appropriate Unless Respondents Consent to a Reduction in the Damage Award

While we disagree with their reading of the statute, appellants correctly point to section 16807, subdivision (b) as the proper measure of damages here. Schedule 2 of the accountant's report shows the accountant already calculated the amount

23

required by section 16807. Specifically, the accountant determined that, on the dissolution date, the partnership's total assets were $731,358.62 and its total liabilities were $253,213.30, resulting in "[t]otal [e]quity" of $478,145.32. Thus, based on section 16807, Scrapit's one-third interest in the partnership on the dissolution date was one-third of $478,145.32, namely $159,381.77.

Given this, we inquired of the parties pursuant to Government Code section 68081 whether the forensic accountant's calculation of the partnership's "[t]otal [e]quity" on March 13, 2015, as $478,145.32 (total partnership assets minus total partnership liabilities) set forth "the profits and losses that result[ed] from the liquidation of the partnership assets" as described in section 16807, subdivision (b).

In their supplemental brief, appellants responded that the accountant's valuation of "[t]otal [e]quity" was not the amount described in section 16807, subdivision (b) because "[t]he trial court made a specific finding that the gross assets of the partnership business were $526,364, based on figures shown in Schedule 1 of the accounting report," which they contend is a factual finding which neither party has challenged on appeal. We disagree that the court made a finding about the total assets of the partnership. Schedule 1 is not a balance sheet but a cash flow statement, and does not reflect total partnership assets. The trial court did not find that the partnership's assets were $526,364, and it clearly referred to one of the two components, $450,000, as "inventory" and to the other, $76,364, as "profits." The judgment cannot be read as equating the sum of these two amounts as the assets of the partnership on the dissolution date,

24

contrary to the express findings in the accounting report upon which the trial court relied.

Respondents contend in their supplemental brief that the accountant's valuation of "[t]otal [e]quity" was not the amount described in section 16807, subdivision (b) "because the partnership's assets were never liquidated."[20]  As discussed above, when a partner dissociates from a partnership and the remaining partners carry on with the business, the dissociating partner is entitled to recover the amount that a liquidation would have yielded.  Thus, the lack of an actual liquidation in this matter is immaterial.

In sum, neither appellants nor respondents offer any persuasive reason why the amount set forth in the accounting report as the partnership's "[t]otal [e]quity" on March 13, 2015, does not measure the "profits and losses that result[ed] from the liquidation of the partnership assets" as described in section 16807, subdivision (b).  Because appellants correctly accept that a proper measure of damages here is to apply section 16807, subdivision (b), we conclude it is appropriate as a matter of judicial economy to modify the judgment to reflect a damages award of $159,381.77 and conditionally affirm the judgment as modified, subject to respondents' consent to that reduction.  (See Cal. Rules of Court, rule 8.264(d) ["If a Court of Appeal decision conditions the affirmance of a money judgment on a party's consent to an increase or decrease in the amount, the judgment is

_____

[20] Attached to respondents' supplemental brief was a copy of e-mail correspondence respondents' counsel had with the forensic accountant's partner regarding our request for further briefing.  We will not consider this information as it is outside the record.

reversed unless, before the decision is final under (b), the party serves and files a copy of a consent in the Court of Appeal"].) Should respondents not timely consent, the damages award is reversed.

## DISPOSITION

The award of damages is reduced from $175,454.67 to $159,381.77, and the judgment conditionally affirmed as modified subject to respondents' consent pursuant to California Rules of Court, rule 8.264(d). If respondents timely file a consent, the clerk shall send a file-endorsed copy of the consent to the superior court along with the remittitur. If respondents do not timely file a consent, the damages award is reversed and the matter remanded for a new trial limited to determining the amount of damages to be awarded to respondents, as liability has been established.

Each party is to bear its own costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

CHANEY, J.

BENDIX, Acting P. J.

26