Filed 9/25/24  338 South Avenue 16 v. Meyer CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| 338 SOUTH AVENUE 16, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL HAROLD MEYER et al.,<br><br>Defendants and Appellants. | B322757, B326100<br><br>(Los Angeles County Super. Ct. No. BC717120) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle Court Williams, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Mario Iskander for Defendants and Appellants.

Vivoli Saccuzzo and Michael W. Vivoli for Plaintiff and Respondent.

# I.   INTRODUCTION

338 South Avenue 16, LLC (plaintiff) brought an action against Michael Meyer (Meyer) and Lamont Roberts (Roberts) (together, defendants) for breach of contract and common counts for alleged violations of a commercial lease.  Following a bench trial, the trial court entered judgment in favor of plaintiff on the breach of contract cause of action and in favor defendants on the common counts cause of action.  The court awarded plaintiff $133,360.60 against defendants, and defendants appeal.

# II.   BACKGROUND

A.   *The Lease*

On August 15, 2016, under an "AIR Commercial Real Estate Association Standard Industrial/Commercial Multi-Tenant Lease—Gross" (Lease), defendants leased from plaintiff 3,502 square feet of space at 381 South Avenue 17 in Los Angeles (the Premises).[1]  The lease was for a five-year term commencing on August 22, 2016, with monthly rent of $4,027.30.  The "Agreed Use" for the Premises was "[f]ilm production, warehouse and creative office space, and for no other use or purpose."

---

[1]   Plaintiff owned several adjoining units on South Avenue 16 and South Avenue 17, including the Premises.  Plaintiff "designated" the Premises' address as 381 South Avenue 17, but the Post Office address was 351B South Avenue 17.  Although many of the documents in this case use one or the other of these addresses, none of the parties asserts any legal significance to those discrepancies.

Paragraph 7.3(b) of the Lease required defendants to obtain plaintiff's advance written approval for utility installations[2] or alterations[3] to the Premises. The Lease permitted defendants, without advance written consent but upon notice to plaintiff, to make non-structural alterations or utility installations that were not visible from the outside; did not involve puncturing, relocating, or removing the roof or any existing walls; would not affect the electrical, plumbing, HVAC (heating, ventilation, and air conditioning), and/or safety systems; and were within stated cost limits.

An addendum to the lease stated that the Premises did not have an HVAC system. Defendants were permitted to install an HVAC system on the condition that they received plaintiff's advance, written approval, and they used a licensed, bonded, and insured HVAC vendor.

Section 18 of the Lease's Rules and Regulations provided that the "Premises shall not be used for lodging or manufacturing, cooking or food preparation or for any illegal purpose."

Paragraph 13.1(c) of the Lease provided,

---

[2] The Lease defined "utility installations" as "all floor and window coverings, air and/or vacuum lines, power panels, electrical distribution, security and fire protection systems, communication cabling, lighting fixtures, HVAC equipment, plumbing, and fencing in or on the Premises."

[3] The Lease defined "alterations" as "any modification of the improvements, other than Utility Installations or Trade Fixtures, whether by addition or deletion." "Trade fixtures" were defined as defendants' "machinery and equipment that can be removed without doing material damage to the Premises."

"13.1 Default; Breach.  A 'Default' is defined as a failure by the Lessee to comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease.  A 'Breach' is defined as the occurrence of one or more of the following Defaults, and the failure of Lessee to cure such Default within any applicable grace period:

"[¶]  . . .  [¶]

"(c)    The failure of Lessee to allow Lessor and/or its agents access to the Premises or the commission of waste, act or acts constituting public or private nuisance, and/or illegal activity on the premises by Lessee, where such actions continue for a period of 3 business days following written notice to Lessee.  In the event that Lessee commits waste, a nuisance or an illegal activity a second time then, the Lessor may elect to treat such conduct as a non-curable Breach rather than a Default."

Under paragraph 13.2(a) of the Lease, plaintiff was entitled to terminate defendant's right to possession of the Premises in the event of a breach.

B.    *Defendants' First Illegal Activity on the Premises*

Daryoush Dayan was a real estate investor and developer and plaintiff's managing partner.  The Premises and adjoining properties were up to industrial code when plaintiff purchased them.

Farhad Abolfathi owned Fortuna Asset Management (Fortuna), a commercial real estate management company.  Fortuna managed the Premises for plaintiff.  Abolfathi testified it was important to plaintiff that the Premises not be used as a residence because the Premises were not zoned for residential use

4

and such a use created a safety hazard for occupants and liability issues for plaintiff.

On April 5, 2017, the City of Los Angeles Fire Department issued a notice of a "Fire/Life Safety Violation" with respect to the Premises.[4] The notice alleged several violations of various Los Angeles Municipal Code sections concerning unpermitted alterations that had been made to the Premises and the use of the premises as a residence and ordered the owner to remediate the violations.

On May 31, 2017, the City of Los Angeles Building and Safety Department issued to plaintiff a "Substandard Order and Notice of Fee" (Substandard Order) concerning the Premises. The Substandard Order asserted four violations of various sections of the Los Angeles Municipal Code.

The first violation stated the Premises were substandard due to illegal occupancy and ordered plaintiff to stop using the Premises for living, sleeping, cooking, or dining. The Substandard Order explained that two mezzanines had been built with bedrooms, bathrooms, a kitchen, and offices without permits or inspection approval.[5] Plaintiff was to remove the unapproved construction or obtain permit and inspection approvals.

---

[4] The notice was addressed to the Premises' prior owner and plaintiff did not receive "this initial notice." Meyer's testimony about whether he received the notice was equivocal.

[5] In their opening brief on appeal, defendants admit that after they moved onto the Premises, Meyer built two mezzanines, a kitchen, and a shower without obtaining a permit or plaintiff's prior written consent.

5

The second violation stated the Premises were substandard due to hazardous electrical wiring and ordered plaintiff to make the wiring code compliant and obtain required permits or remove the unapproved "installations."

The third violation stated the Premises were substandard due to hazardous plumbing and ordered plaintiff to make the plumbing code compliant and obtain required permits.

The fourth violation stated the Premises were substandard due to the presence of hazardous mechanical equipment in unapproved living quarters and ordered plaintiff to remove the mechanical equipment or obtain permit and inspection approval.

Meyer testified he knew the Premises could not be used for residential purposes and that he had to obtain plaintiff's consent prior to making improvements or alterations to the Premises. He never obtained a permit for any of the work he had done on the Premises.

Meyer admitted that he stayed overnight on the Premises several times. He kept a hotplate, microwave, and refrigerator within the Premises. He had two mezzanines and a shower installed. A City of Los Angeles fire marshal told Meyer to remove the improvements.

On June 15, 2017, Fortuna e-mailed defendants a notice that they were in violation of section 7.3(b) of the Lease for making alterations to the Premises without plaintiff's prior written approval, and of section 18 of the Lease's Rules and Regulations which prohibited using the Premises for lodging. The letter demanded that defendants stop using the Premises for "living, sleeping, cooking and/or dining," "remove all unapproved construction of the two mezzanines," and "remove all

6

unpermitted electrical and plumbing." Fortuna gave defendants 10 days after receipt of the letter to cure their default.

In an e-mail dated June 24, 2017, Meyer responded that defendants did not use the Premises for lodging. He stated that defendants had taken down one of the mezzanines and had started taking down the other. Further, defendants apparently had retained an architect who would prepare plans for a "minimalist shower and sink" that defendants would present to plaintiff for its approval. By an e-mail on June 26, 2017, Fortuna demanded that defendants remove all unauthorized work.

After additional communication with Fortuna, Meyer informed Fortuna on June 29, 2017, that he would be removing the offices and a loft. He had not removed the shower and sink, for which he wanted to apply for City of Los Angeles permits and hoped that would satisfy plaintiff.

At trial, Meyer testified that he never used the Premises for lodging. By July 4, 2017, he had removed the two mezzanines and the shower.

C.    *Defendants' Second Illegal Activity on the Premises*

Meyer testified that in around July 2017, he informed plaintiff that he was going to bring a pop-up camper[6] onto the Premises. The camper was 16 feet long and lightweight—he could "carry" it in and out by himself. Meyer used the camper as an office. He wanted a space small enough that he could use a space heater and a small air conditioning unit that he could plug into the wall to moderate the temperature. There was a table

---

[6]    The structure also, apparently, was referred to as a "tent" and a "trailer" during the trial.

inside the camper where three people could sit with Meyer. Meyer did most of his business "that way" for about one year.

Abolfathi received a letter dated March 29, 2018, from the Los Angeles City Attorney's Office (City Attorney) informing him that a criminal complaint had been filed charging plaintiff with a violation of Los Angeles Municipal Code section 57.110.1.1— "commonly known as unsafe conditions of structure or existing equipment" and, potentially, other charges.

Dayan also received a letter from the City Attorney informing him of the criminal complaint. He spoke with a deputy city attorney who was "angry" because building residential spaces in industrial or commercial spaces could lead to someone losing their life.

The City Attorney provided Dayan access to evidence it had of violations on the Premises. Dayan was unaware of any of the violations before the City Attorney filed the criminal complaint.

The criminal complaint, dated March 26, 2018, alleged four counts[7] for municipal violations at the Premises that occurred on or about April 5, 2017: Count 2 alleged plaintiff "did unlawfully store combustible material in exits and enclosures for stairways and ramps"; count 3 alleged plaintiff "did unlawfully fail to provide a working space of not less than 30 inches (762 mm) in width, 36 inches (914 mm) in depth and 78 inches (1981 mm) in height in front of electrical service equipment, and where the electrical service equipment was wider than 30 inches (762 mm), did fail to provide a working space not be less than the width of the equipment, and located storage of materials within the

---

[7] The summons for the complaint stated the complaint alleged five counts. The complaint does not allege a count number 1.

designated working space"; count 4 alleged plaintiff "did unlawfully have extension cords and flexible cords as a substitute for permanent wiring; or extension cords and flexible cords affixed to structures, extended through walls, ceiling or floors, or under doors or floor coverings; or such cords that are subject to environment damage or physical impact"; and count 5 alleged plaintiff "did unlawfully fail[] to install, repair, operate, test and maintain fire protection systems pursuant to the section."

Abolfathi had the "understanding" that the camper Meyer parked on the Premises led to the "second violation from the city"—i.e., the criminal complaint.[8]  On April 5 and again on April 11, 2018, Fortuna sent defendants a letter advising them they were in default of the lease for using the Premises for lodging.  The letter stated that as a result of the default plaintiff had been served with a criminal complaint.  It demanded defendants remove the camper and any other items associated with lodging within three calendar days.

Abolfathi "authorize[d]" a notice of "non-curable default" to be issued to defendants.  On April 12, 2018, plaintiff's counsel e-mailed defendants a letter stating plaintiff's understanding that defendants "continued to utilize the Premises for residential use, in violation of both the Lease and the notices of default previously provided [to them].  In fact, [plaintiff] has now received a criminal complaint filed against it arising out of your illegal use of the Premises.  In light of both your failure to cure the prior notice of default regarding your illegal use of the Premises and your ongoing use of the Premises for an unlawful

---

[8]  We note that the criminal complaint concerned conditions on the Premises on or around April 5, 2017—a time when the evidence suggests the camper was not on the Premises.

purpose, [plaintiff] has elected to treat your conduct as non-curable breaches, rather than a default, pursuant to Article 13.1(c) of the Lease.  In light of your non-curable breaches, [plaintiff] hereby terminates your rights of possession under the Lease and we demand you surrender possession to [plaintiff], as required under Article 13.2(a) of the Lease."  Counsel informed defendants that if they failed to surrender possession of the Premises within three days, plaintiff would file a civil action against them to obtain possession and for damages.

Meyer responded the same day, asking plaintiff for two weeks to remove defendants' belongings.  Meyer stated that defendants "would love to accommodate your desire to retake the [P]remises."

On April 19, 2018, plaintiff's counsel e-mailed Meyer, "If you will surrender the keys to [plaintiff] no later than noon tomorrow, [plaintiff] will agree to arrange for the retrieval of your property within the next two weeks.  Please confirm whether we have a deal; otherwise, we'll proceed with legal action and the recovery of all fees, costs and rental damages arising out of the lease."  Meyer and Roberts testified they interpreted that e-mail as allowing defendants to vacate the Premises without any form of litigation or legal proceeding or further costs or damages or further rental payment if they turned in the keys.

Meyer responded to counsel that most of his property had been removed and all property would be removed by Monday morning.  He asked counsel to let him know if that was acceptable and added, "Either way, by Monday morning, I will agree to waive any and all rights of any kind or nature that [Roberts], me or our companies have or might have to possession of the property or its contents as of Monday, April 23, 2018[,] in

10

consideration of the weekend to complete the removal of property as per your e[-]mail of 90 minutes ago."

Counsel then e-mailed Meyer that "[c]onsistent with our text exchanges, attached is an acknowledgment I need you to sign and return, confirming your agreement to vacate the Premises by Monday at noon." The attached letter provided, in part, "[Y]ou have indicated you will voluntarily vacate the Premises and will remove all of your property by noon this Monday, April 23, 2018, at which time you will relinquish the keys to the Premises. In exchange for your agreement to do so, we will agree to defer filing suit against you." At the bottom of the letter was a space entitled "Accepted and Agreed" with a place for Meyer's signature that provided, "On behalf of the named tenants, Michael Meyer and Lamont Roberts, I, Michael Meyer, hereby confirm the Premises will be vacated no later than Monday, April 23, 2018, at 12:00 p.m., and that the keys will be delivered to a representative of Landlord at the Premises at that time. Any right to possession of the Premises will be deemed abandoned as of that time without the need of further legal proceedings by the Landlord."

Shortly thereafter, Meyer responded to counsel, "Please let this serve as my confirmation of my agreement to vacate the Premises by Monday at noon. I will get a signed version digitized as soon as I can get to a printer." Meyer testified that although he received counsel's e-mail, he did not see the attached letter with the acceptance and agreement provision.

Meyer and Roberts testified they timely removed the camper from the Premises as Fortuna demanded and timely vacated the Premises.

11

D.    *Post-Trial Proceedings and the Trial Court's Ruling*

The presentation of evidence concluded on April 19, 2021. Thereafter, the parties filed posttrial closing briefs.[9]

On May 19, 2021, the trial court granted Meyer's motion to file an amended answer that included novation/modification and estoppel affirmative defenses.

On July 7, 2021, the trial court issued an "Intended Statement of Decision." As an initial matter, the court noted that Roberts's default was entered on January 11, 2019, and Roberts had not moved to vacate entry of default.

The intended statement of decision then found in favor of Meyer on plaintiff's breach of contract and common counts causes of action based on his novation affirmative defense. The intended statement of decision stated, "Based on all the correspondence concerning the termination of this lease, including the e[-]mails exchanged between [p]laintiff's counsel and . . . Meyer, the court finds all parties agreed, by words and conduct, to cancel the original contract and to substitute a new contract in its place. While [p]laintiff stated it would 'defer' filing suit in its April 19, 2018 letter, counsel's e[-]mail to Meyer later that day states, 'If you will surrender the keys to my client no later than noon tomorrow, my client will agree to arrange for the retrieval of your property within the next two weeks. Please confirm whether we have a deal; otherwise, we'll proceed with legal action and the recovery of all fees, costs and rental damages arising out of the lease.' This language explicitly offers to waive the right to file a lawsuit if [d]efendants surrender the keys. As such, the court

---

[9]    The briefs are not part of the record on appeal.

12

finds defendants have met their burden to show novation."[10] Because Roberts was in default, the court found in favor of plaintiff "on the complaint."

Plaintiff filed objections to the trial court's intended statement of decision, arguing plaintiff should be permitted to present additional evidence on defendants' novation affirmative defense because it was added posttrial; plaintiff proffered its counsel's testimony about his communications with Meyer concerning the termination of the Lease. The court set the matter for a further evidentiary hearing on August 19, 2021, at which hearing plaintiff's counsel testified and plaintiff offered other evidence. The record on appeal does not contain a reporter's transcript of that testimony—defendants state that the proceeding was not reported.

On February 28, 2022, after further proceedings,[11] the trial court issued a "Second Final Statement of Decision" that found in favor of plaintiff on its breach of contract cause of action and in favor of defendants on plaintiff's common counts cause of action. The court rejected Meyer's novation affirmative defense, relying, in part, on plaintiff's counsel's testimony and other evidence presented at the August 19, 2021, hearing. It also rejected defendants' estoppel affirmative defense, finding "there has been no novation and no agreement on the part of plaintiff to waive

---

[10] Although the court found that "defendants" had met their burden on this affirmative defense, it earlier found that Roberts's default had previously been entered.

[11] On September 22, 2021, the trial court filed a second "Intended Statement of Decision" and on October 6, 2021, an order entitled "Second Final Statement of Decision."

lost rent or other damages.  Since there was no statement or agreement to rely on, defendants could not have been damaged by doing so.  The promissory estoppel defense fails."

The trial court awarded plaintiff $133,360.60 as follows: $81,065.74 for lost rent, $8,564.25 for the unamortized portion of the Lease commission, and $43,730.64 paid to Hoffman Construction to oversee and perform repairs and upgrades "required by Meyer's modification of the [P]remises."  The court ruled that plaintiff was not entitled to $17,200 it requested for mandatory upgrades to other units from the loss of "grandfathered" code compliance and $38,734.36 it requested for legal fees paid to defend against the criminal complaint.

## III.   DISCUSSION

### A.   *Roberts's Default*

Roberts contends the trial court erred in entering judgment against him based on his default.  He contends plaintiff waived his default by allowing him to participate in the trial without objecting and the court erred in denying his Code of Civil Procedure section 473 (section 473) motion to set aside his default and default judgment.  Because plaintiff waived Roberts's default, the court erred in entering judgment against Roberts based on that default.

#### 1.   Standard of Review

"[T]he application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo.  [Citations.]"

14

(*Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 912–913; *City of Orange v. San Diego County Employees Retirement Ass'n.* (2002) 103 Cal.App.4th 45, 51 ["The parties agree that the standard of review is independent or de novo review because the appeal involves purely legal issues based on undisputed facts. [Citation.]"]; *In re Marriage of Hall & Frencher* (2016) 247 Cal.App.4th 23, 26 ["Frencher has raised a purely legal issue with undisputed facts, so we apply the de novo standard of review. [Citation.]"].)

2.    Background

On August 7, 2018, plaintiff filed its complaint against defendants. On January 11, 2019, the clerk of the Superior Court entered Roberts's default. On January 30, 2019, Meyer and Roberts filed a joint answer. Thereafter, the matter proceeded to trial and Roberts participated in the trial without objection by plaintiff that Roberts's default had been entered.

On July 7, 2021, the trial court filed its intended statement of decision in which it stated that Roberts's default had been entered and Roberts had not moved to vacate entry of default. On July 29, 2021, Roberts moved to vacate his default, apparently pursuant to section 473.[12] On March 8, 2022, the court denied the motion because it was not brought within six months of the default's entry as required by section 473, subdivision (b).

On May 19, 2022, the trial court entered its judgment.

---

[12]    Roberts's motion and plaintiff's opposition, if any, are not a part of the record on appeal.

15

On May 26, 2022, Roberts filed a section 473 motion to vacate his default and default judgment and to deem his amended answer filed.[13]  Roberts argued, in part, that plaintiff had waived Roberts's default by permitting Roberts to participate in the trial without objection.  The trial court denied the motion.[14]

3.    Analysis

A plaintiff who accepts a defaulted defendant's answer without objection and participates in a trial with a defaulted defendant without objection has waived the defendant's default. (*Madison v. Octave Oil Co.* (1908) 154 Cal. 768, 770–771; *Hestres v. Clements* (1863) 21 Cal. 425, 426; *Oil Tool Exchange, Inc. v. Schuh* (1944) 67 Cal.App.2d 288, 297; *Nicholls v. Anders* (1936) 13 Cal.App.2d 440, 444; see also *Brown v. Pacific Tel. & Tel. Co.* (1980) 105 Cal.App.3d 482, 486.)  It is undisputed that plaintiff participated in the trial with Roberts without objecting that Roberts was in default.  Accordingly, plaintiff waived Roberts's default and the trial court erred when it did not apply the doctrine of waiver to vacate the default.[15]

---

[13]    Plaintiff's opposition, if any, is not part of the record on appeal.

[14]    The trial court's ruling is reflected in the Register of Actions.  The record on appeal does not contain a reporter's transcript or minute order for the hearing on the motion.

[15]    Because we hold plaintiff waived Roberts's default, we need not reach Roberts's claim that the court erred in denying his section 473 motion.

Plaintiff argues any error in denying Roberts relief from his default was harmless because Roberts was permitted to participate in the trial. We disagree. Because Roberts was in default, his liability was established independent of the evidence adduced at trial. (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 898 ["A defendant's failure to answer the complaint has the same effect as admitting the well-pleaded allegations of the complaint, and as to these admissions *no further proof of liability is required.* [Citations.] Thus, in a default situation such as this, if the complaint properly states a cause of action, the only additional proof required for the judgment is that needed to establish the amount of damages. [Citations.].) Moreover, a defaulted defendant may not challenge on appeal the sufficiency of the evidence supporting liability. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 824; *Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1745.)

Accordingly, we reverse the judgment as to Roberts.

B.      *Sufficiency of the Evidence Supporting the Trial Court's Finding That Defendants Committed a Second Violation of the Lease*

Defendants contend that substantial evidence did not support the trial court's finding that they committed a second violation of the Lease—i.e., an "illegal activity"—that plaintiff could permissibly treat as a non-curable breach. We disagree.

17

1.    Standard of Review

    "When an appellant contends the evidence is insufficient to support a judgment, order, or factual finding, we apply the substantial evidence standard of review.  'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below.  [Citation.]  We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.'  [Citation.]  'Substantial evidence' is not synonymous with 'any' evidence; rather, it means the evidence must be of ponderable legal significance, reasonable, credible, and of solid value.  [Citation.]  An appellate court presumes in favor of the judgment or order all reasonable inferences.  [Citation.]  If there is substantial evidence to support a finding, an appellate court must uphold that finding even if it would have made a different finding had it presided over the trial.  [Citations.]  An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact.  [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957–958 (*Cahill*); *Chino Commercial Bank, N.A. v. Peters* (2010) 190 Cal.App.4th 1163, 1169 ["'If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings

18

supported by substantial evidence. [Citations.]' [Citation.]"]
(*Chino Commercial Bank*).)

 2. Analysis

With respect to their first illegal activity violation of the
Lease—illegal occupancy (using the Premises for lodging)—
defendants installed within the Premises two mezzanines,
multiple bedrooms, a shower, a kitchen, and a sink without
permission or permits. They also kept a hotplate, microwave,
and refrigerator on the Premises. Defendants concede the trial
court fairly found they "used the Premises as living space."

Then, within days of remediating their first illegal activity
violation—i.e., by removing the improvements that allowed them
to reside on the Premises—defendants brought the camper onto
the Premises. Given defendants' desire to use the Premises for
lodging and the timing of defendants' placement of the camper on
the Premises, substantial evidence supported the trial court's
implicit finding that defendants used the camper for lodging.
(*Cahill, supra*, 194 Cal.App.4th at pp. 957–958; *Chino
Commercial Bank, supra*, 190 Cal.App.4th at p. 1169.)

Defendants contend that only an uncured default resulted
in a breach under Lease section 13.1. Defendants misinterpret
section 13.1. We agree with plaintiff that section 13.1(c), which
provided that "[i]n the event that [defendants] commit[] . . . an
illegal activity a second time, then, [plaintiff] may elect to treat
such conduct as a non-curable Breach rather than a Default,"
permitted plaintiff to treat a second illegal activity—not a second
*uncured* illegal activity—as a non-curable breach.

19

Defendants further contend that no one contradicted Meyer's testimony that he used the camper as an office. As we explained above, based on the evidence, the trial court reasonably found Meyer used the camper for lodging. We must uphold that finding even if we might conclude that Meyer used the camper as an office. (*Cahill, supra*, 194 Cal.App.4th at p. 958; *Chino Commercial Bank, supra*, 190 Cal.App.4th at p. 1169.)

Finally, defendants contend the trial court erred in finding the camper was an installed improvement because a camper that is "not fixed to the ground, walls, or ceiling," but is instead "wheeled inside an industrial space on wheels is not an improvement." At issue was whether defendants used the camper in violation of the lease provision prohibiting illegal activities—i.e., using the Premises for lodging—not whether a camper was an installed improvement.

C.    *The Novation and Estoppel Affirmative Defenses*

Defendants contend that substantial evidence did not support the trial court's novation and estoppel findings. The court did not err.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Cahill, supra*, 194 Cal.App.4th at p. 956.) An appellant must affirmatively establish error by an adequate record. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) In the absence of a proper record on appeal, the appealable judgment or order is presumed correct and must be affirmed. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

As set forth above, the trial court initially found for defendants on their novation affirmative defense. The court subsequently rejected the novation affirmative defense (and the estoppel affirmative defense based on its ruling on the novation affirmative defense) based on the testimony of plaintiff's counsel and other evidence presented at the reopened evidentiary hearing. That hearing was not reported, and thus not a part of the record on appeal. Because the record on appeal is inadequate to review the court's novation and estoppel findings, we must affirm those findings.[16] (*In re Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133; *Cahill, supra*, 194 Cal.App.4th at p. 956, *Jameson v. Desta, supra*, 5 Cal.5th at p. 609; *Maria P. v. Riles, supra*, 43 Cal.3d at pp. 1295–1296.)

Defendants also contend the trial court erred in addressing promissory estoppel instead of equitable estoppel. They state the court's "intended statement of decision, . . . and second intended statement of decision . . . failed to address estoppel. Meyer objected to the decisions based on this omission. The final statement of decision . . . finally addressed [']estoppel['] but not equitable estoppel as Meyer had argued throughout; instead, the [c]ourt addressed promissory estoppel, which Meyer had never argued." We reject defendants' argument. In their objections to the initial second statement of decision defendants complained that the intended statement of decision "does not address the issue of *promissory estoppel*." (Italics added.) Defendants then

---

[16] In their reply brief, defendants contend Roberts was not permitted to participate in the reopened evidentiary hearing. They do not provide a supporting citation to the record. Because we reversed the judgment against Roberts above, we need not resolve this issue.

set forth the elements of promissory estoppel and argued why promissory estoppel applied in this case.

D.    *Damages*

Defendants contend the trial court erred in awarding any damages other than rent.  They also contend the court's rent calculation was erroneous.

1.    Standard of Review

"An appellant's challenge to damages, depending upon its specific nature, may be subject to a substantial evidence, abuse of discretion, or de novo standard of review.  The question of whether a plaintiff was, in fact, damaged by the defendant's breach of contract is reviewed for substantial evidence.  (See *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873 (*GHK*).)  The question of whether 'a certain measure of damages is permissible given the legal right the defendant has breached, is a matter of law, subject to de novo review. [Citation.]' (*New West Charter Middle School v. Los Angeles Unified School Dist.* (2010) 187 Cal.App.4th 831, 843 (*New West*); see [also] *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 579.)  But where the measure of damages is legally permissible, a trial court's choice of that measure, among other legally permissible measures of damages, is reviewed for abuse of discretion.  (*New West, [supra,* 187 Cal.App.4th] at p. 843, citing *GHK, [supra,* 224 Cal.App.3d] at p. 873.)" (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 583.)

2.    <u>Analysis</u>

According to defendants, the trial court erred in awarding plaintiff $8,564.25 for the unamortized portion of its leasing commission because "there was no foundation for any calculation." Abolfathi testified that he knew what an unamortized brokerage commission was and how to calculate it. He was "familiar with the fact that there was an unamortized brokerage commission of $8,564.25 in this case." Defendants did not object to Abolfathi's testimony on the ground that it lacked foundation or at all and have thus forfeited this contention on appeal. (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 397 ["'It is hornbook law that a timely and specific objection is required to prevent the consideration of certain evidence; the failure to object at all waives any claim of error.' [Citation.]"].)

Defendants also contend the trial court should have offset its rent award by "any increase in rent" plaintiff received after reletting the Premises. They acknowledge there was no evidence adduced at trial about "any increase in rent" but fault plaintiff for the absence of such evidence. Defendants' contention fails because they had the burden of proof on their setoff affirmative defense. (Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"]; *Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 503 ["The burden of proof rests on each party to a civil action as to each fact essential to his claim or defense"].) Defendants could have asked Abolfathi about the rental amount plaintiff received for the Premises after plaintiff terminated the

23

Lease but did not.  Without such evidence, they cannot show the court erred.

Defendants further contend the trial court failed to credit Meyer for his security deposit of $4,532.76.  We reject this contention because defendants fail to cite any part of the record that supports their claim that Meyer paid a security deposit or that plaintiff did not refund any such security deposit.  (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1251, fn. 11 ["Because [party] provides no record citations to support this claim, it is forfeited"].)

Finally, defendants contend the trial court's award of $43,730.64 for the payment to Hoffman Construction was inconsistent with its ruling that plaintiff was not entitled to recover the "cost of mandatory upgrades" to units other than the Premises and thus was error.[17]  We agree.

Dayan testified that the City of Los Angeles required plaintiff to make upgrades to the security and sprinkler systems on the Premises and all of the adjoining properties due to Meyer's illegal construction that turned the Premises into a residential property—older code provisions had been "grandfathered" in and applied to those properties.  Meyer's illegal work triggered the application of new "rules and regulations" requiring plaintiff to "upgrade and change the whole systems."  Plaintiff hired Jonell Hoffman and Hoffman Construction and paid them $43,730.64 as

---

[17]    In connection with this contention, defendants appear to make perfunctory hearsay and foundation evidentiary arguments.  We treat as forfeited perfunctory arguments made without adequate legal argument.  (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4.)

24

a consultant to "figure out what was going on with this situation"—i.e., to respond to the criminal complaint. Jonell Hoffman's timeline includes the following entries: "Met with Trade Fire to walk the building and gain access to *all units* for Fire Sprinkler company" and "Spoke to Trade Fire, met with Edgar and developed a plan for entering *each unit* to replace fire sprinklers." (Italics added.) Dayan's testimony and Jonell Hoffman's timeline support the conclusion that plaintiff's $43,730.62 payment to Hoffman Construction addressed all of plaintiff's properties and not just the Premises.

Based on the trial court's ruling that plaintiff was not entitled to recover the cost of performing mandatory upgrades to units other than the Premises,[18] the court's awarding of damages for the payment to Hoffman Construction for overseeing those upgrades is not supported by substantial evidence. Because no evidence was adduced at trial from which we can apportion the court's Hoffman Construction fee award between recoverable and nonrecoverable fees, we remand this portion of the judgment to the trial court for further proceedings.

---

[18] Plaintiff did not appeal from the court's ruling denying its request for $17,200 for mandatory upgrades to its other units.

## IV.   DISPOSITION

The judgment against Meyer is affirmed and the judgment against Roberts is reversed.  The matter is remanded to the trial court for a recalculation of damages and other proceedings consistent with this opinion.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

MOOR, Acting P. J.

DAVIS, J.*

---

*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26